Case No. 21-2734

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

SANDRA BRUNO,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellee*,

— versus —

WELLS FARGO BANK, N.A.,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Western District of
Pennsylvania, Pittsburgh Division
Civil Action No. 2:19-cv-00587-RJC; The Honorable Robert J. Colville

---

### BRIEF OF APPELLANT

---

SEYFARTH SHAW LLP

TIMOTHY M. WATSON
RACHEL M. HOFFER
JOHN P. PHILLIPS
700 Milam Street, Suite 1400
Houston, TX 77002
Telephone: 713-225-2300
Facsimile:  713-225-2340
twatson@seyfarth.com
rhoffer@seyfarth.com
jphillips@seyfarth.com

PIETRAGALLO GORDON
ALFANO BOSICK &
RASPANTI LLP

SHELLY R. PAGAC
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Telephone: 412-263-2000
Facsimile:  412-263-2001
srp@pietragallo.com

COUNSEL FOR DEFENDANT-APPELLANT

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant Wells Fargo Bank, N.A. discloses that Wells Fargo & Company, a publicly traded company, owns—directly or indirectly—100% of Wells Fargo Bank, N.A. No other publicly-held corporation or publicly-held entity has a direct financial interest in the outcome of the litigation.

 s/ Timothy M. Watson
Timothy M. Watson
Counsel for Defendant-Appellant

Dated: November 15, 2021

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT......................................................... i

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES................................................................................... iv

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUE ...............................................................................2

STATEMENT OF RELATED CASES AND PROCEEDINGS...........................2

STATEMENT OF THE CASE.................................................................................3

    A.    Plaintiff brings a nationwide FLSA collective action against Wells Fargo. ............................................................................3

    B.    Since December 2015, all Wells Fargo HMCs have entered into, and are bound by, Wells Fargo's standard arbitration agreement. ...........................................................................................3

    C.    Two Arbitration HMCs opt into the case but then withdraw their consent forms when shown their arbitration agreements.......................................................................5

    D.    Plaintiff moves for conditional certification, and Wells Fargo objects to notice being sent to Arbitration HMCs. .............5

    E.    The District Court grants conditional-certification and certifies this interlocutory appeal. ...................................................7

SUMMARY OF THE ARGUMENT.......................................................................8

STANDARD OF REVIEW ...................................................................................10

ARGUMENT.........................................................................................................11

A.  Under *Hoffmann-La Roche,* notice may not be sent to individuals who are not eligible as potential plaintiffs to participate in the collective action. ................................................11

B.  Under *Epic Systems,* arbitration agreements with collective action waivers are valid and enforceable...................13

C.  *Bigger* and *JPMorgan* correctly applied *Hoffmann-La Roche* and *Epic Systems* to bar FLSA notice to arbitration employees. .......................................................................................16

D.  *Bigger* and *JPMorgan* were correctly decided and should be adopted as the law of this Circuit. ...........................................20

E.  Concerns about delaying notice to resolve disputes over arbitration enforceability are not applicable in this case............22

F.  For purposes of determining notice, Plaintiff has standing to challenge the validity and enforceability of Wells Fargo's employee Arbitration Agreement...................................24

CONCLUSION ...................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Exp. Co. v. Italian Colors Restaurant,*
570 U.S. 228 (2013) ................................................................ 14

*Asberry-Jones v. Wells Fargo Bank, N.A.,*
No. 2:19-CV-83, 2019 WL 2077731 (E.D. Pa. May 10, 2019) ....................... 4

*Bigger v. Facebook, Inc.,*
947 F.3d 1043 (7th Cir. 2020) .......................................... *passim*

*Blasband v. Rales,*
971 F.2d 1034 (3d Cir. 1992) ................................................. 2

*Droesch v. Wells Fargo Bank, N.A.,*
No. 3:20-CV-6751, 2021 WL 1817057 (N.D. Cal. May 6, 2021) ................. 4

*Droesch v. Wells Fargo Bank, N.A.,*
No. 3:20-CV-6751, 2021 WL 2805604 (N.D. Cal. Jul. 6, 2021) ................ 21

*Epic Systems Corp. v. Lewis,*
138 S. Ct. 1612 (2018) ............................................ 9, 14, 15

*Errickson v. Paychex, Inc.,*
447 F. Supp. 3d 14 (W.D.N.Y. 2020) ....................................... 21

*Fox v. TTEC Services Corp.,*
No. 4:19-CV-37, 2021 WL 1096332 (E.D. Ark. Mar. 22, 2021) ............... 21

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S 20 (1991) ...................................................... 14, 15

*Hammond v. Floor and Décor Outlets of America, Inc.,*
No. 3:19-CV-1099, 2020 WL 6459641 (M.D. Tenn. Nov. 3,
2020) .................................................................. 21

iv

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989).................................................................*passim*

*Holder v. A&L Home Care and Training Center, LLC*,
    ___ F. Supp. 3d ___, 2021 WL 3400654 (S.D. Ohio Aug. 4,
    2021) .............................................................................................21

*Jensen v. Wells Fargo & Company, et al.*,
    No. 3:19-CV-7773, Doc. No. 53 (N.D. Cal. Mar. 19, 2020)
    (unpublished) ................................................................................4

*In re JPMorgan Chase & Co.*,
    916 F.3d 494 (5th Cir. 2019)....................................................*passim*

*Kuchar v. Saber Healthcare Holdings, LLC*,
    No. 1:20-CV-2542, 2021 WL 4290861 (N.D. Ohio Sept. 21,
    2021) .............................................................................................21

*Lincoln v. Magnum Land Services, LLC*,
    560 F. App'x 144 (3d Cir. 2014) ................................................23

*McLean v. Cornucopia Logistics, LLC*,
    No. 19-CV-864, 2021 WL 3709260 (E.D.N.Y. Aug. 20, 2021).....................21

*Mennucci v. Randstad Pros. US, LLC*,
    No. 1:19-CV-4693, 2021 WL 2603711 (N.D. Ga. Mar. 2, 2021) ..................21

*Miller v. Wells Fargo Bank, N.A., et al.*,
    No. 4:20-CV-364, Doc. No. 14 (S.D. Iowa Mar. 5, 2021)
    (unpublished) ................................................................................4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)........................................................................14

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ..............................................11, 12

*Post v. St. Paul Travelers Ins. Co.*,
    691 F.3d 500 (3d Cir. 2012) ........................................................2

*Scherk v. Alberto-Culver Co.,*
    417 U.S. 506 (1974)........................................................................14

*Sperling v. Hoffmann-La Roche Inc.,*
    862 F.2d 439 (3d Cir. 1988), *aff'd, Hoffmann-La Roche Inc. v.*
    *Sperling,* 493 U.S. 165 (1989).....................................................2, 10

*Valte v. United States,*
    __ Fed. Cl. __, 2021 WL 3821886 (Fed. Cl. Aug. 26, 2021) ...................11, 13

*Williams v. Wells Fargo Bank, N.A.,*
    No. 8:19-CV-61, 2019 WL 1410749 (D. Neb. Mar. 28, 2019) .........................4

*York v. Velox Express, Inc.,*
    524 F. Supp. 3d 679 (W.D. Ky. 2021) ............................................21

## Statutes

9 U.S.C. §§ 1, *et seq.*............................................................................13

9 U.S.C. § 2...........................................................................................14

28 U.S.C. § 1292(b)........................................................................1, 7, 17

28 U.S.C. § 1331.......................................................................................1

29 U.S.C. § 216(b)................................................................................1, 11

# JURISDICTIONAL STATEMENT

**Jurisdiction of the District Court.** Plaintiff Sandra Bruno  is a former mortgage loan officer, or "Home Mortgage Consultant," for Wells Fargo Bank, N.A. ("Wells Fargo"). She asserts claims for alleged unpaid overtime compensation on behalf of herself and other similarly situated Home Mortgage Consultants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* The District Court has subject-matter jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 and under 29 U.S.C. § 216(b).

**Jurisdiction of the Court of Appeals.** This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(b). On April 20, 2021, the District Court entered an order making the findings required under 28 U.S.C. § 1292(b). Wells Fargo filed its Petition for Permission to Appeal with this Court on April 30, 2021, and this Court granted the petition on September 2, 2021. *See Bruno v. Wells Fargo Bank, N.A.*, Case No. 21-8023, Doc. 9-1 (3d Cir. Sept. 2, 2021).

## STATEMENT OF THE ISSUE

**Standard of Review.** Because the District Court erred in formulating or applying a legal precept, this Court's review is plenary. *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 515 (3d Cir. 2012) ("We . . . exercise plenary review over [the district court's] 'choice and interpretation of legal precepts.'") (quoting *Blasband v. Rales*, 971 F.2d 1034, 1040 (3d Cir. 1992)); *see also Sperling v. Hoffmann-La Roche Inc.*, 862 F.2d 439, 443 (3d Cir. 1988), *aff'd, Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ("[T]he question whether a court has the power to authorize [collective-action] notice . . . is a legal issue.").

**Statement of Issue.** This appeal raises a single issue:  Did the District Court err in authorizing Plaintiff to send notice of this pending FLSA collective action to individuals who waived their right to participate in a collective action through a valid and enforceable arbitration agreement?

Wells Fargo raised this issue at JA118-119 and JA184-187. The District Court ruled on it at JA12-13, JA15-16, and JA17-25.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously, and Wells Fargo is not aware of any other case or proceeding that is related to this case.

**STATEMENT OF THE CASE**

**A.    Plaintiff brings a nationwide FLSA collective action against Wells Fargo.**

Plaintiff Sandra Bruno, a former Wells Fargo Home Mortgage Consultant ("HMC"), filed this FLSA collective action in May 2019. Plaintiff alleges that her manager required her to work overtime hours off the clock—i.e., without recording the overtime hours in Wells Fargo's timekeeping system. (JA30, JA32.) In addition, according to Plaintiff, Wells Fargo's managers throughout the United States likewise required other HMCs to work off the clock. (JA32.) Plaintiff further alleges that Wells Fargo's written compensation plan applicable to HMCs improperly calculates net commissions, as well as HMCs' regular rate and overtime pay.[1] (JA30, JA32-36.)

**B.    Since December 2015, all Wells Fargo HMCs have entered into, and are bound by, Wells Fargo's standard arbitration agreement.**

In December 2015, Wells Fargo implemented an arbitration policy. (JA138, JA190-91.)  As a result, all Wells Fargo employees who were hired after December 11, 2015—including HMCs—agreed to, and are bound by,

---

[1] Plaintiff also asserts a putative class claim for alleged unpaid overtime compensation under the Pennsylvania Minimum Wage Act. (JA37-38.)

Wells Fargo's standard employee arbitration agreement (the "Arbitration Agreement"). (JA138, JA190-91.) Over 3,900 HMCs whom Plaintiff seeks to include in the putative collective in this case are bound by the Arbitration Agreement ("Arbitration HMCs"). (JA191.)

The Arbitration Agreement is governed by the Federal Arbitration Act ("FAA") and requires arbitration of all employment disputes, including wage-and-hour claims under the FLSA. (JA145, JA193.) It contains an explicit class- and collective-action waiver. (JA145, JA193.) No court has found the Arbitration Agreement invalid or unenforceable. To the contrary, the Arbitration Agreement has been upheld and enforced by at least five separate federal courts, including within the Third Circuit (the U.S. District Court for the Eastern District of Pennsylvania).[2]

---

[2] *See Asberry-Jones v. Wells Fargo Bank, N.A.*, No. 2:19-CV-83, 2019 WL 2077731, at *5 (E.D. Pa. May 10, 2019) ("Based on the clear language of [Wells Fargo's] Arbitration Agreement, Ms. Asberry-Jones's claims are subject to arbitration."); *see also Droesch v. Wells Fargo Bank, N.A.*, No. 3:20-CV-6751, 2021 WL 1817057, at *7 (N.D. Cal. May 6, 2021) (enforcing Agreement); *Miller v. Wells Fargo Bank, N.A., et al.*, No. 4:20-CV-364, Doc. No. 14 (S.D. Iowa Mar. 5, 2021) (unpublished) (same); *Jensen v. Wells Fargo & Company, et al.*, No. 3:19-CV-7773, Doc. No. 53 (N.D. Cal. Mar. 19, 2020) (unpublished) (same); *Williams v. Wells Fargo Bank, N.A.*, No. 8:19-CV-61, 2019 WL 1410749, at *1 (D. Neb. Mar. 28, 2019) (same).

**C.    Two Arbitration HMCs opt into the case but then withdraw their consent forms when shown their arbitration agreements.**

Before Plaintiff moved for conditional certification, two former HMCs (also represented by Plaintiff's counsel) attempted to join the case as opt-in plaintiffs. (JA197; Dkt. Nos. 49, 60.) Both, however, had signed the Arbitration Agreement, and thus withdrew their consent forms once they were presented with their signed Arbitration Agreements. (JA73-76, JA197; Dkt. No. 54.) Both of the HMCs represented by Plaintiff's counsel subsequently filed arbitration demands with the American Arbitration Association. (JA197.)

**D.    Plaintiff moves for conditional certification, and Wells Fargo objects to notice being sent to Arbitration HMCs.**

On July 15, 2020, Plaintiff moved for conditional certification, seeking to notify all HMCs nationwide—approximately 7,800—of their right to participate in the case as plaintiffs. (JA77-78, JA191.) More than 3,900 HMCs, however, are barred from participating in the case under Wells Fargo's standard employee Arbitration Agreement. (JA191.)

Wells Fargo filed its written opposition on December 2, 2020, (JA118-19), supported by evidence describing its arbitration program, (JA138, JA145). Among other things, Wells Fargo argued that notice should not be

sent to those HMCs who had signed Arbitration Agreements. (JA118-19.) As it explained, both the Fifth and Seventh Circuits "have held that notice should not issue to putative class members with arbitration agreements." (JA119 (citing *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019) and *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020)).) And as Wells Fargo explained further, Plaintiff's counsel previously appeared to concede the validity of the Arbitration Agreements. (JA119.)

Plaintiff filed her reply on December 16, 2021. (JA146.) Despite having ample opportunity to challenge the validity or enforceability of the Arbitration Agreements, she never did so. Plaintiff did not challenge Wells Fargo's evidence regarding the Arbitration Agreements; nor did she argue that the Agreement is invalid or unenforceable. Instead, she argued that the issue was premature and should be deferred until the decertification stage. (JA162-63; *see also* JA21.)

Wells Fargo filed a sur-reply in support of its opposition, in which it again stressed that notice may not be provided to those HMCs who signed Arbitration Agreements. (JA184-87.) Wells Fargo also demonstrated that the precise number of HMCs in the proposed collective is 7,836, of whom 3,917 have entered into the Arbitration Agreement. (JA191.)

**E.    The District Court grants conditional-certification and certifies this interlocutory appeal.**

On March 15, 2021, the District Court entered its written order granting conditional-certification and authorizing Plaintiff to send notice of the case to her entire proposed collective, including HMCs bound by the Arbitration Agreement (the "Conditional Certification Order"). (JA12-13.)

The Conditional Certification Order devotes only a single paragraph to the propriety of sending notice to the Arbitration HMCs. While acknowledging the contrary decisions of the Fifth and Seventh Circuits, the District Court concluded that Wells Fargo's argument was "premature," and that "we have no ability to determine whether certain arbitration agreements are enforceable against potential opt-in plaintiffs. . . ." (JA13.)

Wells Fargo promptly requested the District Court to certify the notice issue for interlocutory review pursuant to 28 U.S.C. § 1292(b). By order dated April 20, 2021, the District Court did so (the "1292(b) Order"). (JA17-25.)

In its 1292(b) Order, the District Court noted that Plaintiff does "not seriously contest the validity of said arbitration agreements" and that "there is absolutely no evidence that the agreements are unenforceable."

(JA21-22.)  It further noted that "[p]roviding notice to individuals who have no ability to join this lawsuit cannot advance the purpose of [FLSA] Section 216 because those individuals are not potential plaintiffs." (JA22-23.) The District Court thus partially stayed enforcement of its Conditional Certification Order insofar as it allowed Plaintiff to send notice to Arbitration HMCs. (JA24-25.) It likewise stayed Wells Fargo's deadline to provide contact information for the Arbitration HMCs. (JA25.) The remainder of the case, however, has continued its normal progression during the pendency of this appeal. Plaintiff has distributed notice to those in the putative collective who did not sign the Arbitration Agreement, and the parties have begun the second phase of discovery regarding their allegations. (JA214-20.)

## SUMMARY OF THE ARGUMENT

After ruling that Plaintiff may notify all 7,800 proposed collective members of their right to participate as plaintiffs in this case, the District Court certified this appeal to determine whether it was error to allow notice to be sent to the 3,900 individuals in the group—half of the proposed collective—who are barred from participating in the case under Wells Fargo's standard employee Arbitration Agreement .

8

As the District Court correctly noted, "there are two critical U.S. Supreme Court decisions that must be read together to resolve this legal question." (JA22.) The first is *Hoffmann-La Roche*, which authorizes district courts to facilitate notice under the FLSA in order to allow "potential plaintiffs" to join collectively for "efficient resolution . . . of common issues" and to avoid "duplicative suits." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). But *Hoffmann-La Roche* also bars sending notice to individuals who are categorically ineligible to participate as potential plaintiffs in the collective action. The second is *Epic Systems Corp. v. Lewis,* which squarely held that collective-action waivers in arbitration agreements are valid and, like arbitration agreements generally, "must be enforced as written." 138 S. Ct. 1612, 1632 (2018).

Read together, these two decisions compel the conclusion that notice may not be sent to individuals whose arbitration agreements contain valid and enforceable collective action waivers. Such individuals are not eligible to participate in a FLSA collective, and should not be judicially mislead into believing otherwise.

Significantly, since *Epic Systems* was decided, two federal circuits—the Fifth and the Seventh Circuits—have considered the precise issue

presented here. Both held that *Hoffmann-La Roche* and *Epic Systems*, read together, bar sending FLSA notice to "arbitration employees"—current or former employees bound by arbitration agreements with their employer that render them categorically ineligible to be members of the collective. *See Bigger v. Facebook*, 947 F.3d 1043, 1050 (7th Cir. 2020); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019). Providing such notice after *Epic Systems*, the courts held, cannot be reconciled with the principles governing court-facilitated notice established in *Hoffmann-La Roche*.

The decisions of the Fifth and Seventh Circuits are manifestly correct and should be adopted as the law of this Circuit. On that basis, this Court should reverse the District Court's order insofar as it authorizes notice to be sent to the HMCs who are bound by the Arbitration Agreement.

## STANDARD OF REVIEW

As this Court recognized when it decided *Sperling v. Hoffmann-La Roche,* "the question whether a court has the power to authorize [collective-action] notice . . . is a legal issue," subject to *de novo* review. *Sperling*, *supra*, 862 F.2d at 440, 443-44 (3d Cir. 1988); *Bigger*, *supra*, 947 F.3d at 1048 (7th Cir. 2020) ("[W]e review *de novo* legal conclusions underlying the court's [conditional certification] decision.").

## ARGUMENT

**A.    Under *Hoffmann-La Roche*, notice may not be sent to individuals who are not eligible as potential plaintiffs to participate in the collective action.**

The FLSA says nothing about sending notice of a proposed collective-action to potential collective members. Indeed, "Section 216(b) does not by its terms require" "the sending of notice to potential class members." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010).  Rather, Section 216(b) of the statute provides that an employee may maintain an action individually or on "behalf of . . . other employees similarly situated." 29 U.S.C. § 216(b). Given this language and Congress's stated "policy that [FLSA] plaintiffs should have the opportunity to proceed collectively," the Supreme Court in *Hoffmann-La Roche* confirmed that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to *potential plaintiffs*." *Hoffmann-La Roche*, *supra*, 493 U.S. at 169, 170 (emphasis added).

As the Supreme Court explained, court-authorized notice furthers two primary case-management objectives. *Hoffmann-La Roche*, 493 U.S. at 169, 170; *see also Valte v. United States*, __ Fed. Cl. __, 2021 WL 3821886, at *10 (Fed. Cl. Aug. 26, 2021) ("'[C]onditional certification' is in reality a case-

management device."); *Myers*, *supra*, 624 F.3d at 555 n.10 (same). First, it supports the collective-action device by allowing "potential plaintiffs" to join collectively and take "advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche*, 493 U.S. at 169, 170. Second, court-authorized notice "benefits the judicial system" through the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Id.* at 170. Thus, the Court observed, proceeding collectively also "serves the legitimate goal of avoiding a multiplicity of duplicative suits." *Id.* at 172.

Nevertheless, the Supreme Court also cautioned that, notwithstanding its benefits, collective-actions "present opportunities for abuse," which a "district court has both the duty and the broad authority" to prevent. *Id.* at 171. For example, court-authorized notice should "counter" "the potential for misuse of the class device" by limiting "misleading communications." *Id.* Likewise, the court-facilitated notice process should be "distinguishable in form and function from the solicitation of claims." *Id.* at 174.

Consequently, district courts do not have "unbridled" discretion in overseeing the notice process. *Id.* Rather, they "must be scrupulous to

respect judicial neutrality" and "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.*

In exercising their responsibility to oversee the notice process, district courts do not have discretion to authorize notice to individuals who are not *potential plaintiffs* eligible to *proceed collectively* in the "efficient resolution in one proceeding of common issues of law and fact." *Id.* at 170. Doing so, the Supreme Court emphasized, would contravene the FLSA's purposes; would exacerbate, not avoid, "a multiplicity of duplicative suits"; and would be difficult to distinguish "in form and function from the solicitation of claims," thereby risking the court's perceived neutrality. *Id.* at 171. *Cf. Valte*, *supra*, 2021 WL 3821886, at *11 (Fed. Cl. Aug. 26, 2021) ("[S]ending notice to people who are unlikely to be similarly situated would not serve the purposes of a FLSA collective action and would achieve no efficiencies; it would be nothing more than 'solicitation of claims,' which *Hoffmann-La Roche* specifically forbids.").

## B.     Under *Epic Systems*, arbitration agreements with collective action waivers are valid and enforceable.

Congress enacted the Federal Arbitration Act in 1925 in response to a history of judicial refusal to enforce arbitration agreements. 9 U.S.C. §§ 1, *et*

*seq.*; *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 & n.4 (1974). In the FAA, Congress sought to "place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S 20, 24 (1991). Because the statute establishes a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), courts are to "rigorously enforce arbitration agreements according to their terms," *American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (internal quotation marks and citations omitted); *see also* 9 U.S.C. § 2 (arbitration agreements "shall be valid, irrevocable, and enforceable"). Most recently, in *Epic Systems*, the Supreme Court held that neither the National Labor Relations Act ("NLRA") nor the FLSA bar enforcement of arbitration agreements with collective-action waivers in FLSA collective actions. *Epic Systems*, *supra*, 138 S. Ct. at 1626-27 ("[T]his Court held decades ago that an identical collective action scheme (in fact, one borrowed from the FLSA) does *not* displace the Arbitration Act or prohibit individualized arbitration proceedings.") (citing *Gilmer*, 500 U.S. at 32) (emphasis in original).

The plaintiffs in *Epic Systems* argued that a conflict exists between the right to engage in concerted activity protected by the NLRA and the FAA's

instruction "to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Id.* at 1619. The Court, however, rejected the argument as one of many unsuccessful "efforts to conjure conflicts between the [FAA] and other federal statutes." *Id.* at 1627. The Court "stressed that the absence [in an allegedly conflicting statute] of any specific statutory discussion of arbitration or class actions is an important and telling clue that Congress" did not intend in the other statute to displace the right to individual arbitration under the FAA. *Id.*

In fact, the Court noted, it has rejected every challenge to arbitration under the FAA based on an allegedly superior right arising under another statute. *Id.* Hence, "[g]iven so much precedent pointing so strongly in one direction," the Court concluded, "we do not see how we might faithfully turn the other way here." *Id.* Accordingly, the Court held that nothing in the FLSA or Section 216 prevents employees from waiving, through arbitration agreements, the right to proceed collectively or to bring a claim in court. *Id.* at 1626; *see also Gilmer*, 500 U.S. at 32.

**C.**     ***Bigger* and *JPMorgan* correctly applied *Hoffmann-La Roche* and *Epic Systems* to bar FLSA notice to arbitration employees.**

Since *Epic Systems* was decided, two Circuit Courts of Appeal have addressed the precise issue raised in this appeal, and both reached the same conclusion: authorizing notice to arbitration employees goes beyond the limits *Hoffmann-La Roche* imposed on a district court's discretionary power to oversee the notice process under Section 216. To stay within those limits, notice must (1) serve the purposes the Supreme Court gave for doing so in *Hoffmann-La Roche*, and (2) avoid rather than exacerbate the specific "opportunities for [collective action] abuse" the Supreme Court instructed district courts to avoid in *Hoffmann-La Roche*. *Bigger*, *supra*, 947 F.3d at 1049 (7th Cir. 2020) (citing *Hoffmann-La Roche*, 493 U.S. at 171); *see also JPMorgan*, *supra*, 916 F.3d at 500-501. Yet as both courts correctly concluded, facilitating notice to arbitration employees fails both requirements, and district courts thus lack discretion under Section 216 to authorize such notice. *Bigger*, 947 F.3d at 1050; *JPMorgan*, 916 F.3d at 502.

The Seventh Circuit addressed this issue more recently in *Bigger v. Facebook*, 947 F.3d 1043 (7th Cir. 2020). Plaintiff Susie Bigger worked for Facebook as a Client Solutions Manager ("CSM") and was classified as

overtime exempt under the FLSA. *Bigger*, 947 F.3d at 1047. In her collective action against the company, she sought to notify all other allegedly misclassified CSMs at Facebook of their right to join the case as potential plaintiffs. *Id.* at 1048.

Facebook argued to the district court that notice should not be sent to its "arbitration employees"—those CSMs bound by arbitration agreements in which the CSMs waived their right to participate in a collective action. *Id.* According to Facebook's estimate, over half of the CSMs in the proposed collective had entered into such agreements. *Id.*

The district court granted conditional certification of the entire proposed collective; but like the District Court here, it certified an interlocutory appeal under 28 U.S.C. § 1292(b) to determine whether it acted within its discretion by authorizing notice under Section 216 to the arbitration employees. *Id.*

After examining *Hoffmann-La Roche*, the Seventh Circuit explained how notifying arbitration employees fails to serve the purposes the Supreme Court gave for doing so under Section 216. Notice should advance the goals of allowing "potential plaintiffs" to pool resources and

"resolv[e] in a single action common issues arising from the same alleged illegal activity." *Id.* at 1049 (citing *Hoffmann-La Roche,* 493 U.S. at 170-71).

Notifying arbitration employees, the court noted, fails to advance these goals because arbitration employees are not eligible to pursue their claims as "potential plaintiffs" in the "single [collective] action." *Id.* at 1049-50. Rather, notifying them of their right to join the collective action would misinform them "that they may join the action when, in truth, they may not." *Id.* at 1050.

The Seventh Circuit also explained how notifying arbitration employees would cause or exacerbate the very harms *Hoffmann-La Roche* instructed courts to avoid. Specifically, such notice would invite rather than avoid "a multiplicity of duplicative suits." *Hoffmann-La Roche*, 493 U.S. at 172. That is, as the court explained, such notice "may serve only to prompt [arbitration employees to make] futile attempts at joinder or [to assert] claims outside the collective proceeding." *Bigger*, 947 F.3d at 1050; *see also JPMorgan*, 916 F.3d at 502 ("Notifying Arbitration Employees reaches into disputes beyond the 'one proceeding.'").

This, in turn, would cause the notice process to be difficult to distinguish "from the solicitation of claims" and would create the

appearance that the district court is "endorsing the action's merits." *Bigger,*

947 F.3d at 1049 (citing *Hoffmann-La Roche,* 493 U.S. at 174). Also, the court

continued, notice to arbitration employees "may at least appear to

predominantly inflate settlement pressure," which would "facilitate abuse

of the collective-action device" by allowing  plaintiffs to "wield the

collective-action format for settlement leverage." *Id.* at 1049, 1050.

For these reasons, the Seventh Circuit observed, such notice

jeopardizes a district court's "obligations to maintain neutrality and to

shield against abuse of the collective-action device." *Id.* at 1050.

Accordingly, the Seventh Circuit held that district courts "may not

authorize notice to individuals whom the court has been shown entered

mutual arbitration agreements waiving their right to join the action." *Id.*

The Fifth Circuit reached the same conclusion shortly before *Bigger* in

*In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019). There, the district

court authorized sending notice to approximately 42,000 former and

current employees of JPMorgan Chase ("Chase"). *Bigger*, 916 F.3d at 498.

About 35,000 of the proposed collective members, however, had signed

arbitration agreements waiving their right to proceed collectively against

Chase. *Id.*

Like the Seventh Circuit, the Fifth Circuit observed that under

*Hoffmann-La Roche*, the primary purpose of sending notice, is "for 'efficient

resolution in one proceeding of common issues.'" *Id.* at 502 (citing

*Hoffmann-La Roche*, 493 U.S. at 172-74). But as the Fifth Circuit recognized,

this purpose would not be well-served by inviting 35,000 people to join a

collective action that they cannot join. *Id.* And as the court also noted, it

would lead to significant additional litigation—a specific misuse of the

collective action device *Hoffmann-La Roche* instructed courts to avoid:

> Notifying Arbitration Employees reaches into disputes beyond
> the "one proceeding." And alerting those who cannot
> ultimately participate in the collective "merely stirs up
> litigation," which is what *Hoffmann-La Roche* flatly proscribes.

*Id.* Therefore, the Fifth Circuit concluded, "*Hoffmann-La Roche* does not give

district courts discretion to [authorize] notice of a pending FLSA collective

action to employees who are unable to join the action because of binding

arbitration agreements." *Id.* at 504.

**D.    *Bigger* and *JPMorgan* were correctly decided and should be
       adopted as the law of this Circuit.**

The Fifth and Seventh Circuits correctly applied the Supreme Court's

holdings in *Hoffmann-La Roche* and *Epic Systems*. Indeed, since *Bigger* and

*JPMorgan* were decided, numerous other courts outside of the Fifth and

Seventh Circuits have agreed with and followed their decisions. [3] Thus,

after *Epic Systems,* a district court no longer acts within its discretion when

it authorizes notice to arbitration employees (provided the arbitration

agreement is—like Wells Fargo's Agreement in this case—valid and

enforceable). Authorizing such notice defeats the purposes for doing so

under *Hoffmann-La Roche* and exacerbates the potential for abuse inherent

in collective-actions that *Hoffmann-La Roche* instructs district courts to avoid.

Accordingly, as the District Court below appeared to acknowledge,

its order authorizing notice to the more than 3,900 Arbitration HMCs in

this case should be reversed. (*See* JA22-23 ("Providing notice to individuals

---

[3] *See, e.g., Kuchar v. Saber Healthcare Holdings, LLC,* No. 1:20-CV-2542, 2021 WL 4290861, at *2 (N.D. Ohio Sept. 21, 2021); *Holder v. A&L Home Care and Training Center, LLC,* ___ F. Supp. 3d ___, 2021 WL 3400654, at *8 (S.D. Ohio Aug. 4, 2021) (the plaintiffs' petition for permission to appeal is pending at the Sixth Circuit, Case No. 21-306); *Droesch v. Wells Fargo Bank, N.A.,* No. 3:20-CV-6751, 2021 WL 2805604, at *2-3 (N.D. Cal. Jul. 6, 2021); *Fox v. TTEC Services Corp.,* No. 4:19-CV-37, 2021 WL 1096332, at *5 (E.D. Ark. Mar. 22, 2021); *York v. Velox Express, Inc.,* 524 F. Supp. 3d 679, 688 (W.D. Ky. 2021); *Mennucci v. Randstad Pros. US, LLC,* No. 1:19-CV-4693, 2021 WL 2603711, at *4 (N.D. Ga. Mar. 2, 2021); *Hammond v. Floor and Décor Outlets of America, Inc.,* No. 3:19-CV-1099, 2020 WL 6459641, at *14 (M.D. Tenn. Nov. 3, 2020). *Cf. McLean v. Cornucopia Logistics, LLC,* No. 19-CV-864, 2021 WL 3709260, at *5-6 (E.D.N.Y. Aug. 20, 2021) (denying conditional certification due to arbitration agreements); *Errickson v. Paychex, Inc.,* 447 F. Supp. 3d 14, 29 (W.D.N.Y. 2020) (arbitration employees not similarly situated to plaintiff).

who have no ability to join this lawsuit cannot advance the purpose of

Section 216 because those individuals are not potential plaintiffs.").)

**E.    Concerns about delaying notice to resolve disputes over arbitration enforceability are not applicable in this case.**

In *Bigger* and *JPMorgan*, the courts held that an employer seeking to

exclude a putative collective member from receiving notice based on an

arbitration agreement must establish by a preponderance of the evidence

that the arbitration agreement is valid and enforceable. *Bigger*, 947 F.3d at

1050-51; *JPMorgan*, 916 F.3d at 502-503. Then, if the plaintiff disputes the

validity or enforceability of the agreement, the district court "should

permit submission of additional evidence, carefully limited to the disputed

facts, at the conditional-certification stage." *JPMorgan*, 916 F.3d at 503;

*Bigger*, 947 F.3d at 1050 ("[B]efore authorizing notice to the alleged

'arbitration employees[,]' the court must permit the parties to submit . . .

evidence on the agreements' existence and validity.").

In *Bigger*, the Seventh Circuit rejected the argument that such delays

would undermine *Hoffmann-La Roche*'s goal of efficiently resolving

common issues in one proceeding. *Bigger*, 947 F.3d at 1050. Rather, the

court concluded, misinforming individuals of their right to join a case they

cannot join would cause greater inefficiency by "prompt[ing] futile attempts at joinder or the assertion of claims outside the collective proceeding." *Id.* In any event, the court wrote, "efficiency cannot override the court's obligations to maintain neutrality and to shield against abuse of the collective-action device." *Id.*

Such concerns are irrelevant in this case because there is no dispute over the validity or enforceability of Wells Fargo's employee Arbitration Agreement. Despite the many opportunities to do so in the court below, Plaintiff has never challenged the validity or enforceability of the Arbitration Agreement. As the District Court noted, Plaintiff does "not seriously contest the validity of said arbitration agreements" and that "there is absolutely no evidence that the agreements are unenforceable." (JA21-22.) Indeed, by failing to mount such a challenge at the District Court, Plaintiff may not do so now. *See Lincoln v. Magnum Land Services, LLC*, 560 F. App'x 144, 150 (3d Cir. 2014) (arguments not raised below are waived).

More importantly, as the District Court correctly observed, "[b]ased on the clear language of the [Arbitration Agreement], at this stage, Wells Fargo has sufficiently shown the Arbitration HMCs' claims are subject to

arbitration." (JA22.) Accordingly, because the enforceability of the
Arbitration Agreement requires no further litigation, Plaintiff has no basis
to complain about any delay resulting from litigation required to determine
whether the Arbitration Agreement is valid and enforceable.

**F.  For purposes of determining notice, Plaintiff has standing to
challenge the validity and enforceability of Wells Fargo's employee
Arbitration Agreement.**

Plaintiff has argued that because she is not a party to Wells Fargo's
employee Arbitration Agreement, she lacks standing to challenge its
validity or enforceability. Only the Arbitration HMCs, she claims, have
standing to raise such challenges to the agreement. But this argument is
based on a mischaracterization of the issue being addressed by the District
Court at the conditional certification stage.

The issue at this stage is not, ultimately, whether the Arbitration
Agreement is enforceable. Rather, the issue is whether under Section 216
Plaintiff may send notice to the Arbitration HMCs. Plaintiff does not
otherwise question her standing to argue on behalf of the Arbitration
HMCs that they should receive notice. Thus, Plaintiff has no basis to
disavow her standing to argue on their behalf simply because it requires
her to address the enforceability of the Arbitration Agreement.

Plaintiff cannot use standing as both a sword and a shield. She cannot on the one hand invoke her standing—as the representative of the proposed collective under Section 216—to argue in favor of sending notice, but then on the other hand deny herself standing—as the collective's representative—to address arguments against sending notice.

Plaintiff's argument regarding standing appears to be based on the premise that the District Court's rulings at the conditional certification stage regarding the validity and enforceability of the Arbitration Agreement would be final and binding on the Arbitration HMCs. But the court makes this determination strictly for the purpose of deciding the notice issue. The court's determination does not bind the Arbitration HMCs, and it does not prevent an Arbitration HMC from later challenging the Arbitration Agreement.

The Fifth Circuit confirmed this in *JPMorgan* when it addressed the plaintiffs' argument that Chase was required to move to compel arbitration in order to exclude notice to its arbitration employees. As the court stated:

> Nor does Chase's failure to move to compel arbitration doom its petition, as plaintiffs maintain. It is true that courts cannot compel individuals to arbitrate when they are yet to be identified and have not joined the suit. But to stay within the discretion authorized in *Hoffmann-La Roche*, district courts must

respect the existence of arbitration agreements and must decline to notify Arbitration Employees, who waived their right to proceed collectively, of the pending action.

This does not keep Arbitration Employees from attempting to opt-in to the collective action. Once they do, however, the employer can move to compel them to arbitrate. Nonetheless, under *Hoffmann-La Roche,* district courts do not have the discretion to order that Arbitration Employees receive notice of the action.

*JPMorgan*, 916 F.3d at 503 n.19. Similarly, the Seventh Circuit in *Bigger*

observed: "Even without notice, employees who entered valid arbitration

agreements may try opting in. If they do, the employer may move to

compel arbitration to exclude those employees from the action." *Bigger*, 947

F.3d at 1050 n.6.  Accordingly, for purposes of determining whether notice

should be sent to the Arbitration HMCs, Plaintiff has standing to address

whether Wells Fargo's employee Arbitration Agreement is valid and

enforceable.

## CONCLUSION

The District Court erred in its Conditional Certification Order by (1)

failing to properly apply *Hoffmann-La Roche* and *Epic Systems*; (2) failing to

consider the enforceability of the Arbitration Agreement before authorizing

notice; (3) failing to limit notice to "potential plaintiffs" who are eligible to

participate in the collective action; and (4) authorizing notice to Arbitration HCMs. Accordingly, the portion of the District Court's Conditional Certification Order authorizing notice to the Arbitration HMCs should be reversed.

Dated: November 15, 2021                Respectfully submitted,

                                        SEYFARTH SHAW LLP,


                                  By:  s/ Timothy M. Watson
                                        Timothy M. Watson
                                        Rachel M. Hoffer
                                        John P. Phillips
                                        700 Milam Street, Suite 1400
                                        Houston, Texas 77002
                                        Telephone:  (713) 225-2300
                                        Facsimile:   (713) 225-2340
                                        twatson@seyfarth.com
                                        rhoffer@seyfarth.com
                                        jphillips@seyfarth.com

                                        PIETRAGALLO GORDON
                                        ALFANO BOSICK &
                                        RASPANTI, LLP

                                        Shelly R. Pagac
                                        One Oxford Centre, 38th Floor
                                        Pittsburgh, PA 15219
                                        Telephone:  (412) 263-2000
                                        Facsimile:   (412) 263-2001
                                        srp@pietragallo.com

                                        ATTORNEYS FOR DEFENDANT-
                                        APPELLANT WELLS FARGO
                                        BANK, N.A.

## LOCAL RULE 28.3(d) AND LOCAL RULE 46.1(e) CERTIFICATION

I, Timothy M. Watson, one of the attorney's representing Defendant-Appellant Wells Fargo Bank, N.A., certify that I am a member of the bar of this Court.


 s/ Timothy M. Watson
Timothy M. Watson
Counsel for Defendant-Appellant

Dated: November 15, 2021

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND LOCAL RULE 31.1

I, Timothy M. Watson, counsel for Defendant-Appellant Wells Fargo Bank, N.A., certify that:

(1)     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B)(i) because this brief contains 5,254 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

(2)     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) the type-style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using the 2016 version of Microsoft Word in 14-point Book Antiqua font.

(3)     This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief are identical to the text of the paper copies required by the Court; and Cisco AMP for Endpoints Connector, 7.3.9.20091 has been run on the file containing the electronic version of this brief and no viruses have been detected.

(4)     The paper copies of this brief are identical to the versions submitted electronically on November 15, 2021.

 s/ Timothy M. Watson_____
Timothy M. Watson
Counsel for Defendant-Appellant

Dated: November 15, 2021

## CERTIFICATE OF SERVICE

I hereby certify that, on November 15, 2021, I filed the foregoing instrument with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the Appellate Electronic Filing system. All counsel who are registered to use the Appellate Filing system will be served automatically. I further certify that, on the same day, I served an additional copy upon the following recipients by email and U.S. Mail:

Jeffrey W. Chivers
Theodore I. Rostow
CHIVERS LLP
300 Cadman Plaza West
12th Floor
Brooklyn, NY 11201
Telephone:  (718) 210-9827
Facsimile:   (212) 202-5097
jwc@chivers.com
tir@chivers.com

Joseph H. Chivers
THE EMPLOYMENT RIGHTS
GROUP, LLC
100 First Avenue, Suite 650
Pittsburgh, PA 15222
Telephone:  (412) 227-0763
Facsimile:   (412) 774-1994
jchivers@employmentrightsgroup.com

Brian S. Schaffer
Dana M. Cimera
FITAPELLI & SCHAFFER LLP
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone:  (212) 300-0375
Facsimile:   (212) 481-1333
bschaffer@fslawfirm.com
dcimera@fslawfirm.com

John R. Linkowsky
JOHN LINKOWSKY & ASSOCIATES
715 Washington Avenue
Carnegie, PA 15106
Telephone:  (412) 278-1280
Facsimile:   (412) 278-1282
linklaw@comcast.net

I further certify that, on November 15, 2021, I caused the required number of copies of the foregoing to be sent to the Clerk's Office by FedEx to:

Clerk of the Court
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

I further certify that I have made any privacy redactions required by FED. R. APP. P. 25(a)(5), or that no such redactions were required.

 s/ Timothy M. Watson
Timothy M. Watson
Counsel for Defendant-Appellant

Dated: November 15, 2021

Case No. 21-2734

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

SANDRA BRUNO,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

—versus—

WELLS FARGO BANK, N.A.,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Western District of
Pennsylvania, Pittsburgh Division
Civil Action No. 2:19-cv-00587-RJC; The Honorable Robert J. Colville

## JOINT APPENDIX – VOLUME I OF II
## (PAGES 1 THROUGH 25)

THE EMPLOYMENT RIGHTS
GROUP, LLC

JOSEPH H. CHIVERS
100 First Avenue, Suite 650
Pittsburgh, PA 15222
Telephone:  412-227-0763
Facsimile:   412-774-1994

*Counsel for Plaintiff-Appellee*

SEYFARTH SHAW LLP

TIMOTHY M. WATSON
RACHEL M. HOFFER
JOHN P. PHILLIPS
700 Milam Street, Suite 1400
Houston, TX 77002
Telephone: 713-225-2300
Facsimile:   713-225-2340

*Counsel for Defendant-Appellant*

(Additional Counsel on Inside Cover)

CHIVERS LLP

Jeffrey W. Chivers
Theodore I. Rostow
300 Cadman Plaza West
12th Floor
Brooklyn, NY 11201
Telephone:  718-210-9827
Facsimile:   212-202-5097

FITAPELLI & SCHAFFER LLP

Brian S. Schaffer
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone:  212-300-0375
Facsimile:   212-481-1333

JOHN LINKOSKY & ASSOCIATES

John R. Linkowsky
715 Washington Avenue
Carnegie, PA 15106
Telephone:  412-278-1280
Facsimile:   412-278-1282

*Counsel for Plaintiff-Appellee*

PIETRAGALLO GORDON
ALFANO BOSICK &
RASPANTI LLP

Shelly R. Pagac
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Telephone: 412-263-2000
Facsimile:   412-263-2001

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

## VOLUME I OF II
## PAGES 1 THROUGH 25

| No. | Item Description | Page |
|-----|-----------------|------|
| 1 | March 15, 2021 Memorandum Opinion | JA1 |
| 2 | March 15, 2021 Order | JA15 |
| 3 | April 20, 2021 Memorandum Opinion | JA17 |

## VOLUME II OF II
## PAGES 26 THROUGH 220

| No. | Item Description | Page |
|-----|-----------------|------|
| 4 | Plaintiff's Second Amended Individual and Collective/Class Action Complaint | JA26 |
| 5 | Defendant's Answer to Second Amended Individual and Collective/Class Action Complaint | JA41 |
| 6 | Notice of Withdrawal of Opt-in Plaintiff Robert O'Connell | JA73 |
| 7 | Notice of Withdrawal of Opt-in Plaintiff Alexander Aguera | JA75 |
| 8 | Plaintiff's Motion to Conditionally Certify an FLSA Collective and to Facilitate Notice and Memorandum in Support (without exhibits) | JA77 |
| 9 | Defendant's Response in Opposition to Plaintiff's Motion for Conditional Certification | JA97 |

| No. | Item Description | Page |
|-----|-----------------|------|
| 10  | Declaration of Scott Kilker ............................................................ JA126 | |
| 11  | First Declaration of Michelle Wilkie ............................................ JA134 | |
| 12  | Plaintiff's Reply in Support of Motion to Conditionally Certify an FLSA Collective and to Facilitate Notice ................ JA146 | |
| 13  | Defendant's Sur-Reply in Opposition to Plaintiff's Motion for Conditional Certification .......................................... JA168 | |
| 14  | Second Declaration of Michelle Wilkie ...................................... JA190 | |
| 15  | Declaration of Timothy M. Watson ............................................ JA197 | |
| 16  | Docket Sheet, Dated November 15, 2021 ................................... JA199 | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SANDRA BRUNO, individually and on )
behalf of all others similarly situated, )
                                          )
            Plaintiffs, )       2:19-cv-00587-RJC
                                            )
            vs. )
                                              )
WELLS FARGO BANK N.A. )
                                            )
            Defendant. )

## <u>MEMORANDUM OPINION</u>

Robert J. Colville, United States District Judge.

       Plaintiff Sandra Bruno and Opt-In Plaintiffs (Joao Jacinto, Timothy Hollingsworth, Sharon Austin, Stanley Sobieski, William Hutchinson, and Alan DiGiovanni) (collectively, "Plaintiffs") seek collective certification of Home Mortgage Consultants ("HMCs") who work or have worked as HMCs for Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo') nationwide since May 17, 2016, based on violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). The court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

       Presently pending before the court is Plaintiffs' motions for conditional certification of the collective action under the FLSA.[1] (ECF No. 76). For the reasons that follow, the motion will be granted and the plaintiff will be authorized to disseminate the as yet to be agreed-upon proposed notice and opt-in consent forms.

---

[1] Plaintiffs also allege a Pennsylvania Minimum Wage Act claim on behalf of a class of HMCs pursuant to Federal Rule of Civil Procedure 23. They are not moving for certification of that class at this point in the litigation.

## I. Background

The allegations in the Second Amended Complaint (ECF No. 58) (hereinafter, "SAC") are as follows. Defendant is a national bank providing online and mobile banking, home mortgage, loans and credit, investment, retirement, wealth management, and insurance services throughout the United States. (SAC ¶ 13). At all relevant times, Wells Fargo Bank maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices. (SAC ¶ 14). Defendant is an enterprise with more than $500,000 in revenues and engaged in interstate commerce and is subject to the provisions of the FLSA. (SAC ¶ 17).

Plaintiffs and the similarly situated HMCs have the primary duty of sales and sales support, including assisting Defendant's customers with their mortgage applications, advising customers about available loan products, programs, rates, policies, underwriting requirements and loan procedures, and selling Defendant's various mortgage-related products to Defendant's customers. (SAC ¶ 29).

Defendant has been required to compensate Plaintiffs and all other similarly situated HMCs at least the minimum wage for every hour worked, up to and including 40 hours per workweek, and overtime pay for hours worked over 40 per workweek. (SAC ¶¶ 54, 55). Plaintiffs and all other similarly situated HMCs have regularly worked more than forty hours per week. (SAC ¶ 56). Yet, as a matter of common nationwide policy and practice, it is alleged, Wells Fargo has failed to pay minimum and overtime wages by: (1) unlawfully requiring significant off-the-clock work; (2) recapturing wages previously paid to the HMCs resulting in the denial of required minimum wage and overtime pay; and (3) failing to properly calculate the regular rate of pay when calculating overtime premiums due. (SAC ¶ 58). As a result of these

common policies Defendant has failed to pay Plaintiffs and all other similarly situated HMCs at the minimum wage required for non-overtime hours, or proper overtime rate (time-and-one-half the regular rate of pay) for all overtime hours worked. As a result of these common policies and the resulting violations of the FLSA, Defendant has also failed to maintain accurate time records of Plaintiffs' and all other similarly situated Mortgage Consultants' compensable work time. (SAC ¶ 59). Defendant's failure to pay the minimum wage required in workweeks or the proper overtime rate for all overtime hours worked, and failure to maintain accurate records of time worked, Plaintiffs allege, has violated and continues to violate the FLSA.

The parties engaged in somewhat limited discovery prior to the pending motion. Two Wells Fargo representatives have been deposed, and opt-in Plaintiffs who submitted declarations in support of Plaintiffs motion have been deposed. Wells Fargo has produced its employee handbooks, its written incentive plans, and payroll for Plaintiff Bruno. As far as the Court can discern, Plaintiff's served Wells Fargo with a Federal Rule of Civil Procedure 30(b)(6) notice but said deposition has not taken place. Not all discovery has been provided as to all opt-in plaintiffs. The Court has deferred Phase II discovery pending the ruling on Plaintiff's Motion. (ECF No. 87). Plaintiffs have attached to their motion excerpts of deposition testimony, and the declarations of Plaintiffs Bruno, Hutchinson, Jacinto, Austin, and DiGiovanni.

## II. **Standard of Review**

Collective actions brought under the FLSA, unlike class actions under Federal Rule of Civil Procedure 23, may be conditionally certified by the court to jumpstart and facilitate the notice process to potential collective action members. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74, (2013). Although "conditional certification is discretionary, the Supreme Court has recognized its importance. A district court's early intervention in the preparation and distribution

3

of notice to potential participants serves legitimate purposes including avoidance of a multiplicity of duplicative suits and establishing cut-off dates to expedite disposition of the action." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989).

Conditional certification "requires a named plaintiff to make a 'modest factual showing' – something beyond mere speculation – to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)). In other words, this initial step of conditional certification is a determination of whether similarly situated plaintiffs exist. *Zavala*, 691 F.3d at 536 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). In deciding whether employees in a putative collective are similarly situated for conditional certification, "[r]elevant factors include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses." *Zavala*, 691 F.3d at 536-37. Courts making a determination on a conditional certification motion "typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification[,]" and given the "modest burden" during the first stage of the proceedings, "motions for conditional certification are generally successful." *Rood v. R&R Express, Inc.*, No. 2:17-CV-1223-NR, 2019 WL 5422945, at *2 (W.D. Pa. Oct. 23, 2019) (citations omitted).

We "must adhere to the two-tiered process outlined by the Third Circuit in *Camesi [v. Univ. of Pittsburgh Med. Ctr.*, 2009 WL 1361265 *3 (W.D. Pa. May 14, 2009)], and at [step one], the

4

JA4

Court cannot address and adjudicate either [a defendant's] defenses or the merits of Plaintiffs' FLSA claims." *McConnell v. En Eng'g, LLC*, 2020 WL 6747991, at *3 (W.D. Pa. Oct. 8, 2020); *see also Rood v. R&R Express, Inc.,*, 2019 WL 5422945, at *3 (W.D. Pa. Oct. 23, 2019) (Ranjan, J.) (rejecting arguments that plaintiffs were exempt and that litigating the claims as a collective would require "many fact-specific mini-trials" because "[b]oth arguments 'obscure the scope of the instant inquiry' by asking the Court to prematurely 'engage in a merits-based analysis.'")

## III. <u>Discussion</u>

### A. Conditional Certification

The court must determine whether there "exists an identifiable class of employees within which some of the employees were subjected to an alleged unlawful policy or practice in a manner that will permit a finding that the employees were similarly situated." *Vasil v. Dunham's Athleisure Corp.*, 2015 WL 7871360, at *3 (W.D. Pa. Dec. 4, 2015). Turning to the substance of the conditional certification motions, Plaintiffs have made a modest factual showing in support of conditional certification.

In support of their motion, Plaintiffs have filed the following declarations: Exhibit A, Declaration of Sandra Bruno ("Bruno Decl."); Exhibit B, Declaration of William Hutchinson ("Hutchinson Decl."); Exhibit C, Declaration of Joao Jacinto ("Jacinto Decl."); Exhibit D Declaration of Sharon Austin ("Austin Decl."); Exhibit E, Declaration of Alan DiGiovanni ("DiGiovanni Decl."). Based on these and other declaration we note the following: 1) Plaintiffs have all performed the same basic function: sales and sales support, including assisting Defendant's customers with their mortgage applications, advising customers about available loan products, programs, rates, policies, underwriting requirements and loan procedures, and selling Defendant's various mortgage-related products to Defendant's customers; 2) they all are paid

according to the same pay system: hourly pay (that was ultimately recaptured) and commissions; 3) HMCs nationwide received offer letters based on a template, *see* Stipulated Facts, *Barreras v. Wells Fargo & Company*, No. 17 Civ. 4344 (PA)(AS), ECF No. 25 (C.D. Cal. Oct. 26, 2017), and further, HMCs' offer letters state that their pay will be governed by compensation plans that detail their compensation. *Id.*; 4) all HMCs nationwide are all subject to the same commission plan.[2] *See* Exhibit F, Declaration of Mark Faktor ("Faktor Decl."); 5) they all have worked more than 40 hours in at least one workweek during their employment since May 17, 2016; and 6) they are all subject to the same nationwide common policies and practices of requiring off-the-clock, uncompensated work; of having regular wages from earlier pay periods recaptured in subsequent pay periods; and, of having the wrong regular rate of pay used in the calculation of overtime. Plaintiffs' job duties and pay structures are identical to the putative collective members nationwide, as they are all subject to the same compensation plans regardless of location worked. (ECF No. 77-6 at 2, Faktor Decl. ¶ 2).

Wells Fargo's timekeeping policy requires all hourly employees, including HMCs, to report "all hours worked," including overtime. These hours must be recorded in "Time Tracker," the Bank's online timekeeping system in which team members record the start and stop time for each period of work on an electronic timesheet. Team members are "responsible for submitting timely and accurate reports in Time Tracker of the hours [they] worked. This includes any time spent on electronic devices for business purposes. The seven Plaintiffs in this case worked in five Bank branches: two in New Jersey, two in Pennsylvania, and one branch in Virginia. Collectively,

---

[2] Faktor, who is the Finance Manager for Wells Fargo working in the Bonus/Commission Administration Department, has declared: "At all times relevant […], [HMCs'] employment was governed by terms and conditions outlined in written Comp Plans that was typically revised at least annually. [HMCs] were notified of this in the offer letters they received upon coming to work for Wells Fargo. Under these Comp Plans, [HMCs] earned hourly pay and could qualify for certain monthly incentive payments that were based on various loan funding activity." Faktor Decl. at ¶ 2.

they reported to five different managers during the relevant time period. As HMCs, Plaintiffs' primary job duty was selling mortgage loans. HMCs are paid pursuant to a written compensation plan. The plan provides for: (1) hourly pay; (2) commissions and incentives; and (3) overtime premiums.

Plaintiffs claim that Wells Fargo maintained a common practice and policy of requiring Plaintiffs and other HMCs to work off the clock, as follows. Opt-in Plaintiff William Hutchinson, who worked in Wells Fargo's Princeton, New Jersey office, declared, "I was instructed by management [to] not report overtime. I know that other HMCs, including [lists 23 names] received the same instructions from management. I, along with other HMCs, including [lists names], were told not to record hours that went into overtime for training, corporate calls, rallies, or for our sales meetings." (ECF No. 77-2). Hutchinson further testified, "The other problem with the [Time Tracker] system was no matter [what]– most loan officers work 60 hours plus. The system would cut off at a certain number, so you couldn't even put in the honest hours. . . . [Y]ou could not physically put in the hours. The system would cut us off." (ECF No. 104-2 at 6, Ex. A to Plaintiffs' Reply, Hutchinson Depo. at 17:3-9). Opt-in Plaintiff Sharon Austin, who worked in the Wells Fargo Woodbridge, Virginia office, testified, "I was questioned on a few [occasions], yes, and told not to exceed 40 again." (ECF No. 104-3 at 7, Ex. B to Plaintiffs' Reply, Austin Depo. at 23:21-22). Opt-in Plaintiff Joao Jacinto, who worked in Red Bank, New Jersey and Long Branch, New Jersey, testified, "When we were putting in time sheets, [Wells Fargo management] would tell us don't put in -- you know, you have too many hours, lower your time sheet and don't put so many hours." (ECF No. 104-4 at 10, Ex. C to Plaintiffs' Reply, Jacinto Depo. at 33:3-7). Opt-in Plaintiff Alan DiGiovanni, who worked in Princeton, New Jersey, testified, "[Michael Johnston told me not to report all hours] after one of the meetings we had. There was a compensation plan that was

7

JA7

renewed, and he said there's no need to report more than 40 hours." (ECF No. 104-5 at 7, Ex. D to Plaintiffs' Reply Brief, DiGiovanni Depo. 23:2-17). Plaintiff Sandra Bruno, who worked in the Pittsburgh and Cranberry Township, Pennsylvania, Wells Fargo offices, was asked, "Now, there was nothing that prevented you from recording that time; right? You could have gone on Time Tracker and recorded it?", to which she responded, "No. . . . It had to be approved overtime. . . . . Anything on the norm on an everyday basis, weekly basis, had to be approved or authorized by management. (ECF No. 104-6 at 21, Ex. E to Plaintiffs' Reply, Bruno Depo. at 77:2-9).

These common policies, individually and collectively, have the result of denying Plaintiffs and the similarly situated HMCs throughout the United States the minimum wage and overtime pay otherwise due under the FLSA. First, as to whether plaintiffs are similarly situated with respect to recapture claims, Plaintiffs have submitted evidence that they and other HMCs received similar offer letters which explained their first four pay periods of pay would not be deducted, i.e. "recaptured,' by Wells Fargo, if their commissions for that month were less than their pay. Yet Wells Fargo carried over this pay deficiency and recaptured it from the HMCs in the next month. Thereafter, under the nationwide compensation plan, Wells Fargo recaptured from them previously paid hourly pay, including straight time portion of overtime for hours over 40 hours per week.

Second, Plaintiffs have presented sufficient evidence that the collective is similarly situated with respect to regular rate claims. Here, Plaintiffs have shown that Defendant failed to use a "weighted average" by not applying all remuneration, specifically commission payments and non-discretionary bonuses, when determining Plaintiffs' and other HMC's regular rates. See Opt-In Plaintiff Declarations.

Third, Plaintiffs have supported their contention that the collective is similarly situated with respect to "off the clock" claims. As summarized *supra*, opt-in Plaintiffs in sworn declarations

8

JA8

and in depositions describe specific instances where their supervisors told them not to record hours, identify with specificity dozens of other HMCs who received the same instructions, and identify various technological and procedural impediments to their recording all hours. They have described Wells Fargo's practice to require off-the-clock work, despite its written policies to the contrary. Defendant actively instructed Plaintiffs and all other similarly situated HMCs not to report all their actual overtime worked. The Plaintiffs' testimony also shows these policies were common across the company—both in the different cities and states the Plaintiffs worked and other states through managers and branch protocols.

In response to this factual showing, Wells Fargo posits arguments which would require the court to weigh evidence and resolve factual disputes[3] and are better suited for stage two certification upon a completed record, *e.g.*, that certain Plaintiffs were exempt from the FLSA's overtime requirements under the "outside sales exemption." Although the parties have engaged in some discovery prior to and after the filing of the present motions, merits discovery has not been concluded and it would be premature to make determinations on Defendant's arguments at this stage. *Rood*, 2019 WL 5422945, at *3; *see also*, *Stallard v. Fifth Third Bank*, No. 2:12-cv-01092, 2013 WL 12308493, at *3 (W.D. Pa. Dec. 12, 2013) ("[T]o the extent that merits discovery would wholly undercut the claims of commonality" this may lead to decertification, but at conditional certification plaintiffs need only fulfill their "relatively modest obligation" to present evidence that they are similarly situated.) "Whether individualized determinations will predominate and render this case unsuitable for a collective action is more appropriately reviewed during step two of the certification process." *Bowser*, 324 F.R.D. at 352 (internal citations and quotation marks omitted).

---

[3] Wells Fargo has provided declarations of other HMCs who attest that they were not subject to an off the clock policy and that their managers have made clear to them they are required to record all of their hours they work in Time Tracker. (ECF No. 98-1, Ex. A to Defendant's Resp. in Opp.) These, too, would require us to address the merits of the Plaintiffs' claim, and are premature at this point in the two-phase litigation.

*Sloane*, 2016 WL 878118, at *5 ("whether a plaintiff falls within a particular exemption under the FLSA overtime provision constitutes a mixed question of law and fact, and ultimately requires courts to examine the historical and record facts); *Haskins v. VIP Wireless Consulting*, 09-754, 2009 WL 4639070, at *6 (W.D. Pa. Dec. 7, 2009) ("[W]hether an employee is exempt from overtime provisions is a mixed question of law and fact to be resolved by the court."). The court will address any such fact-specific arguments and merits-based defenses when and if decertification is requested.

Wells Fargo cites to its written policy regarding overtime reporting, off the clock work, and instances where Plaintiffs recorded some (but not all) overtime work. Wells Fargo also argues that their policy was lawful. Again, these arguments are better suited with the benefit of a completed record, and even so may not be dispositive of whether the collective advances similar claims. *Pereira v. Foot Locker*, Inc., 261 F.R.D. 60, 67 (E.D. Pa. 2009) (stating that, at the conditional certification stage, an employer's written policies regarding off-the-clock work "are not dispositive of collective certification and this Court will not deny certification based on evidence of Defendant's official policy against such work") (citing *Chabrier v. Wilmington Fin., Inc.*, Civ. A. No. 06-4176, 2006 WL 3742774, at *3 (E.D. Pa. Dec. 13, 2006)); *McConnell,* 2020 WL 6747991, at *3.

Plaintiffs have met their modest showing that their claims and circumstances of employment are similar. The putative collective seeks the same form of relief - to be paid uncompensated overtime wages. Plaintiffs testified that they worked off the clock and named other HMCs who they know also worked off the clock. Furthermore, they testified that management were instructed to tell them not to report all hours worked. Wells Fargo branches and offices worked under the same nationwide policies and practices. Plaintiffs have therefore

10

met their burden of showing "an identifiable class of employees within which some of the employees were subjected to an alleged unlawful policy or practice in a manner that will permit a finding that the employees were similarly situated[,]" *Vasil*, 2015 WL 7871360, at *3, and therefore, the motion for conditional certification will be granted. Once discovery is completed, Plaintiffs will have the burden of meeting the greater standard in the final certification stages, and Wells Fargo may reassert its arguments at that procedural juncture.

### B. Equitable Tolling

Under the FLSA, a plaintiff's claim to recover unpaid overtime compensation must be commenced within two years of the alleged violation (i.e., the accrual of the cause of action) – unless the violation is willful, in which case the limitations period is enlarged to three years. 29 U.S.C. § 255(a). A named plaintiff's claim commences "on the date when the complaint is filed," whereas an opt-in plaintiff's claim only commences "on the subsequent date on which [the opt-in plaintiff's] written consent is filed." 29 U.S.C. § 256(a)-(b). Thus, the FLSA's statute of limitations effectively is tolled for all named plaintiffs' claims upon filing the complaint, but it continues to run for opt-in plaintiffs until their written consents are filed with the court.

Plaintiffs request the FLSA statute of limitations be tolled until notice has been sent to potential opt-in plaintiffs. They cite to delays caused by various scheduling matters and motions, as well as the slowing of the litigation caused by the COVID-19 pandemic. Under these circumstances, some of which are extraordinary, equitable tolling is warranted for all putative class members. Courts have equitably tolled the statute of limitations in a FLSA action when doing so is in the interest of justice. *See, e.g., Partlow v. Jewish Orphans' Home of Southern Cal., Inc.,* 645 F.2d 757, 760-61 (9th Cir.1981) (equitable tolling proper where plaintiffs were without fault and "practical effect of not tolling the statute would be to bar forever any claim" the employees had

against defendant*), abrogated on other grounds by Hoffman-LaRoche Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *see also Beauperthuy v. 24 Hour Fitness USA, Inc*., 2007 WL 707475 at *8 (N.D. Cal. Mar .6, 2007) (equitably tolling FLSA statute of limitations because of factors outside plaintiffs' control, including litigation, arbitration and settlement of related action); *see also Sullivan-Blake v. FedEx Ground Package Sys., Inc*., 2019 WL 4750141, at *6 (W.D. Pa. Sept. 2019) and cases cited therein.

Here, the decision on conditional certification has been delayed for several reasons, including Wells Fargo's request for a four-month stay for the parties to depose opt-in Plaintiffs, its filing of a motion for summary judgment prior to the completion of Phase II discovery and motion for reconsideration of our ruling on said motion. Accordingly, we will order that the FLSA statute of limitations for potential opt-in plaintiffs be tolled from July 15, 2020, the date of the filing of the motion to conditionally certify the collective action, until 60 days after notice is mailed to putative class members.

### C. Notice

The Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) ... by facilitating notice to potential plaintiffs." *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Wells Fargo objects to certain portions of the proposed notice. First, Wells Fargo argues that the HMCs who agreed to arbitration should not receive notice. Under the policy, Wells Fargo argues, team members hired after December 11, 2015 agreed to arbitrate any employment disputes with Wells Fargo, including those which involve wage and hour claims under the FLSA and similar state laws. Plaintiffs explain that none of the current opt-in Plaintiffs signed the arbitration agreement, and further, the argument is premature. Moreover, cases cited by Wells Fargo are not binding on this court as they

12

arise in the Fifth and Seventh Circuits. *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019; *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020). In addition, we agree this argument is premature, and we have no ability to determine whether certain arbitration agreements are enforceable against potential opt-in plaintiffs, and to hold otherwise would cause further delays in the FLSA notice process. *Delara v. Diamond Resorts Int'l Mktg., Inc.*, No. 19 Civ. 00022 (APG)(NJK), 2020 WL 2085957, at *6 (D. Nev. Apr. 30, 2020).

Plaintiffs seek court authorized notice to be sent by mail, text message, and email to all HMCs who work or have worked at Wells Fargo from May 17, 2016 to present, and that the court set the notice period to 60 days. Wells Fargo opposes producing any information concerning putative collective members except their names and last known mailing addresses. Plaintiffs request the court to instruct Defendant to produce contact information including telephone numbers and email-addresses for each of its current and former employees in the Proposed FLSA Notice Group. They cite to case law where district courts have approved these methods of distribution. *Belt v. P.F. Chang's China Bistro, Inc.*, No. 18 Civ. 3821, 2020 WL 3829026, at *9 (E.D. Pa. Jul. 8, 2020) ("[I]it is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers") (collecting cases). These facilitative measures are appropriate under the circumstances of this case. The court must monitor the distribution of notice to ensure it is "timely, accurate, and informative." *Vasquez v. CDI Corp.*, 2020 WL7227271, at *5(E.D. Pa. Dec. 7, 2020) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). Accordingly, Wells Fargo must produce names, last known mailing addresses, telephone numbers, and other identifying information for the putative collective

13

JA13

members.[4]

Wells Fargo also opposes allowing Plaintiffs to send a reminder letter during the opt-in period. We find a reminder letter reasonable. Courts in the Third Circuit regularly permit reminder letters. *Garcia v. Vertical Screen, Inc.*, 387 F. Supp. 3d 598, 608 (E.D. Pa. 2019); *Archer v. Defs., Inc.*, No. 18-CV-470, 2018 WL 5962470, at \*4 (D. Del. Nov. 14, 2018). Rather than being redundant, "a reminder letter gives notice to putative plaintiffs who do not receive, open, or view the initial letter; it also helps putative plaintiffs who misplace or forget about the initial letter." *Belt* 2020 WL 3829026, at \*9.

The parties are expected to meet and confer regarding the contents of the notice, and the statute will be accordingly tolled during that time until the notice is agreed upon or approved by the Court. Further, the parties shall meet and confer with respect to any schedule for Phase II discovery and shall file a Joint Proposed Case Management Order, which shall also include a proposed briefing schedule for final certification of the FLSA collective class and, if appropriate, class certification.

### IV. Conclusion

Based on the foregoing, Plaintiffs' motion for conditional certification (ECF No. 76) will be granted. An appropriate order will be entered.

Dated: March 15, 2021.                          BY THE COURT:
                                                s/ *Robert J. Colville*
                                                Robert J. Colville
                                                United States District Judge

Cc:  Record counsel via CM-ECF

---

[4] Plaintiff has asked that this information be provided within fifteen days; Wells Fargo asks for 30 days to comply. We will order compliance within 30 days.

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SANDRA BRUNO, individually and on )
behalf of all others similarly situated, )
)
              Plaintiffs, )     2:19-cv-00587-RJC
)
        vs. )
)
WELLS FARGO BANK N.A. )
)
           Defendant. )

## ORDER

AND NOW, this 15th day of March, 2021, in accordance with the Memorandum Opinion filed contemporaneously hereto,

IT IS HEREBY ORDERED that Plaintiff's Motion to Conditionally Certify an FLSA Collective and to Facilitate Notice (ECF No. 76) is hereby GRANTED and the collective shall include all persons who worked as Home Mortgage Consultants for Defendant Wells Fargo Bank, N.A., at any time during the period spanning from three years before the filed Complaint (or May 17, 2016) through the pendency of this proceeding.

IT IS FURTHER ORDERED THAT Plaintiffs' request for equitable tolling is granted. The FLSA statute of limitations for potential opt-in Plaintiffs shall be tolled from July 15, 2020 until 60 days after notice is mailed to putative class members.

IT IS FURTHER ORDERED THAT within seven (7) days of the issuance of the Memorandum Opinion and Order, counsel shall submit to the Court an agreed-upon Notice and Consent form to be sent to potential class members. The Notice shall comply with the directives in the accompanying Memorandum Opinion.

IT IS FURTHER ORDERED that within thirty (30) days of the issuance of this order,

1

JA15

Defendant shall produce to Plaintiff a computer-readable data file containing the full names, last-known mailing addresses, email addresses, the last four digits of social security numbers, and telephone numbers of all potential opt-in plaintiffs, as well as the dates of employment and work locations.

IT IS FURTHER ORDERED THAT the parties shall meet and confer within thirty (30) days of the close of the opt-in period for purposes of conducting a Rule 16 conference. Within fourteen (14) days of such conference, the parties shall submit a proposed scheduling order addressing deadlines and revised case management plan with respect to Phase II discovery.

BY THE COURT:

s/ *Robert J. Colville*
Robert J. Colville
United States District Judge

Cc: Record counsel via CM-ECF

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA BRUNO, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | 2:19-cv00587-RJC |
| vs. | ) ) | |
| WELLS FARGO BANK N.A. | ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM ORDER</u>

Presently pending before the Court is an Expedited Motion to Certify Interlocutory Appeal under 28 U.S.C. §1292(b) (ECF No. 131) and an Expedited Motion to Stay Deadline for Production of Contact Information for Home Mortgage Consultants ("HMCS"), or Alternatively, Arbitration HMCS (ECF No. 133), filed on behalf of Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Wells Fargo has requested interlocutory review of the Court's March 15, 2021 orders concerning conditional certification directing that HMCs with arbitration agreements ("Arbitration HMCs") be included in the group of HMCs to receive notice of this case brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. (ECF Nos. 127 and 128). We previously ruled that notice of this case should be sent to *all* HMCs who have worked at Wells Fargo since July 15, 2017—including HMCs who were hired after Wells Fargo implemented its arbitration policy on December 11, 2015. According to Wells Fargo, nearly 3,900 HMCs entered into the standard arbitration agreement, which would bring the total size of the collective to roughly 7,800.

Wells Fargo has requested the Court consider this motion on an expedited basis and stay the agreed upon deadline of April 21, 2021 for it to provide Plaintiffs with contact information of collective members pending consideration by the United States Court of Appeals for the Third

1

JA17

Circuit. In the alternative, Wells Fargo requests a "partial stay" of the deadline so that only the deadline for producing contact information for Arbitration HMCs is stayed. We will grant the motion to certify interlocutory appeal and will grant the stay in part as to the deadline for the production of contact information for Arbitration HMCs. Because of the numerous delays in this matter, in the interest of justice, notice procedures shall move forward with respect to non-Arbitration HMCs.

Wells Fargo will ask the Third Circuit to examine the relevant authorities to determine whether it agrees with the United States Courts of Appeal for the Fifth (*In re JP Morgan Chase & Co*, 916 F.3d 494, 501 (5th Cir. 2019) and Seventh Circuit (*Bigger v. Facebook*, 947 F.3d 1043, 1050 (7th Cir. 2020) that district courts lack discretion to require that notice be sent to employees who have entered into valid arbitration agreement under certain circumstances at the conditional certification phase of actions brought under the FLSA. To be clear:

> Wells Fargo does not seek review of the Court's order granting conditional certification. Indeed, Wells Fargo has conceded (in its alternative request for a stay) that notice of the case may be sent to non-arbitration HMCs. Instead, Wells Fargo's Motion seeks appellate review of a limited, narrow issue: whether the Court may facilitate notice to Arbitration HMCs who are barred as a matter of law from joining this case (the "Arbitration Question"). Importantly, the Third Circuit has not addressed this significant and "increasingly recurring issue."

(ECF No. 139 at 5) (citing cases).

Wells Fargo's alternative proposal for a partial stay of the deadline—so that the stay of the deadline for producing contact information for HMCs is limited to only arbitration HMCS – is opposed by Plaintiffs. Plaintiffs also oppose the certification of interlocutory appeal. Plaintiffs correctly note that other district courts in this Circuit have held, as we originally did, that the question of arbitration clauses is best resolved at the second stage of the case upon full consideration of a record after merits-based discovery. However, the vast majority of those cases pre-date the decisions in *JP Morgan Chase* and *Bigger*. The United States District Court for the Western District of Kentucky recently framed this issue:

2

JA18

Plaintiffs cite *Clark v. Pizza Baker, Inc.*, where the District Court for the Southern District of Ohio held that "the presence of an arbitration agreement is considered premature even at the conditional certification stage[.]" 2019 WL 4601930, at *7, 2019 U.S. Dist. LEXIS 161623, *21 (S.D. Ohio Sep. 23, 2019). Clark adopts the district court's rationale from *Bigger v. Facebook*, 375 F. Supp. 3d 1007, 1022-23 (N.D. Ill. 2019), which was later vacated by the Seventh Circuit. 947 F.3d at 1056. Further, the *Clark* opinion acknowledges that the district court must determine the existence of an arbitration agreement between a named plaintiff and the defendant "prior to ruling on the issue of conditional certification[;]" but holds that "the presence of an arbitration agreement between defendants and *potential* plaintiffs, who have yet to opt-in to the suit" is an issue better reserved for the more individualized decertification stage. 2019 WL 4601930, at *7, 2019 U.S. Dist. LEXIS 161623 at *19-20 (emphasis added). Under either the Fifth and Seventh Circuits' approach or the *Clark* approach, the district court must consider the existence of valid arbitration agreements at some point in a collective action. The only dispute is whether such a consideration is appropriate at the conditional certification phase or should be reserved for the decertification phase when the court exercises greater scrutiny.

"The twin goals of collective actions are enforcement and efficiency." *Bigger*, 947 F.3d at 1049. While "it may be efficient to first send notice to a group of people and then weed out those who opt in but are in fact ineligible to join[,] ... in the specific situation where the court has been shown certain individuals may not join the action, it may be *in*efficient to send notice to those people[.]" *Id.* at 1050 (emphasis original). Additionally, "[e]ven if efficiency favors sending notice to individuals who entered arbitration agreements, efficiency cannot override the court's obligations to maintain neutrality and to shield against abuse of the collective-action device." *Id.* The Seventh Circuit elaborated on the court's obligations as follows:

> These obligations become prominent when the employer alleges that proposed notice recipients entered arbitration agreements. This is because, if the defendant provides proof—or is denied the opportunity to provide proof— that 'arbitration employees' are among the proposed notice recipients, then sending notice to those individuals may at least appear to predominantly inflate settlement pressure instead of inform employees of an action in which they can resolve common issues. Also, in that situation, the risk is high that the notice will appear to facilitate abuse of the collective-action device and thus place a judicial thumb on the plaintiff's side of the case.

*Id.* The Court is persuaded by the Fifth and Seventh Circuits' rationales for considering arbitration agreements at the conditional certification stage, and will therefore follow the Fifth and Seventh Circuits' approach. *See id.* at 1048-51; *JPMorgan*, 916 F.3d at 501-03. Under this approach, because Velox

opposes the issuance of notice by asserting that proposed notice recipients entered mutual arbitration agreements, the trial court must take specific steps:

First, the court must determine whether a plaintiff contests the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients.

If no plaintiff contests those assertions, then the court may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements.

But if a plaintiff contests the defendant's assertions, then —before authorizing notice to the alleged 'arbitration employees'—the court must permit the parties to submit additional evidence on the agreements' existence and validity. The employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice.

*Bigger*, 947 F.3d at 1050. Plaintiffs do not directly challenge Velox's assertions about the existence of mutual arbitration agreements; rather, Plaintiffs argue that consideration of such agreements is improper at the conditional certification stage. Thus, under the framework set forth in *Bigger,* the Court "may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements." 947 F.3d at 1050.

. . .

Because Plaintiffs have not challenged the existence of arbitration agreements between Velox and prospective collective members, the Court will not permit distribution of the Notice to otherwise eligible opt-in plaintiffs if they are bound by arbitration agreements with Velox. Yet because of the disagreement among circuits in the significance of arbitration agreements at the conditional certification stage, Plaintiffs were not on notice that they would be required to bring such a challenge to the existence of arbitration agreements at this stage. Thus, the Court does not foreclose Plaintiffs' ability to challenge the existence or validity of these arbitration agreements. If Plaintiffs "contest[ ] the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients[,]" the parties will be permitted to introduce limited evidence as to the agreements' existence and validity in conformity with the Fifth and Seventh Circuit approach. *Bigger*, 947 F.3d at 1050.

*York v. Velox Express, Inc.,* 2021 WL 918768, *4-5 (W.D. Ky. March 10, 2021) (record citations omitted).

Wells Fargo's various filings in opposition to the conditional certification raised this issue, and in fact, provided evidence in support of its position,[1] thus putting Plaintiffs on notice here. *See* ECF No. 98 at 22-23 ("Thus, before authorizing notice, a court should decide which employees have entered into valid arbitration agreements and "must decline to notify [employees], who waived their right to proceed collectively, of the pending action.") *and* ECF No. 116 at 18 ("But if the Court grants conditional certification, Wells Fargo should not be required to disclose names and contact information for putative collective members who agreed to arbitrate; nor should those individuals receive notice because (1) there is no dispute as to the validity of the arbitration agreements; and (2) the two circuit courts to consider the issue have held that notice should not be sent to employees with valid arbitration agreements."). Wells Fargo then argued that the subsequent voluntary withdrawal of opt-in Plaintiffs consent forms (O'Connell and Aguera)[2] lends credence to its position that Plaintiffs do not seriously contest the validity of said arbitration agreements. And it is clear from the record before us that Plaintiffs' primary objection to the notices not going out to Arbitration HMCs (in addition to the delays in this case) was its position that the Court should adhere to the two-step certification process as set forth *in Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 536 (3d Cir. 2012), which had been contested in this case, i.e. by Wells Fargo filing a motion for summary judgment out of time.

Yet Wells Fargo does not intend to directly contest the two-step certification process on appeal. It requests a more-narrow holding, asking:

> Do district courts have discretion to send, or to require or authorize the

---

[1] Wells Fargo submitted to the Court the arbitration agreement applicable to team members (ECF No. 132-1), as well as the employee handbook (ECF No 132-1 at 8), noting that it had been upheld as enforceable in several other courts. Moreover, its Employee Relations consultant explained in her affidavit that "all of [Wells Fargo] team members . . . hired after December 11, 2015, are required to agree to arbitrate employment disputes between them and the Bank, including disputes regarding wage and hour claims under the FLSA and similar state laws" and waived their right to participate in a class, collective, or representative action. (Wilkie Decl. ¶¶ 23-25); (ECF No. 132-1 at 2-3).

[2] Both these individuals have filed arbitration claims with the American Arbitration Association after withdrawing from this action. (ECF No. 132-2, Declaration of Timothy M. Watson, at ¶ 4).

5

parties to send, notice of a pending FLSA collective action to individuals who have
waived their right to participate in a collective action through a valid
and enforceable arbitration agreement?

(ECF No. 132 at 7).

When addressing the issue of arbitration earlier, we noted that the question was "premature,
and we have no ability to determine whether certain arbitration agreements are enforceable against
potential opt-in plaintiffs, and to hold otherwise would cause further delays in the FLSA notice
process."( ECF No. 127 at 13). Yet there are two critical U.S. Supreme Court decisions that must
be read together to resolve this legal question. In *Hoffman-LaRoche*, the Supreme Court limited
the district court's discretion to facilitate § 216 notice to only those persons who will be *eligible* to
participate in the pending suit ("potential plaintiffs"). *Hoffmann-La Roche*, 493 U.S. 165, 169
(1989) ("... district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b)
... by facilitating notice to potential plaintiffs.") (emphasis added). Notice that facilitates the
joinder of additional plaintiffs in a single collective action "serves the legitimate goal of avoiding
a multiplicity of duplicative suits[.]" *Id*., at 172. Under *Epic Systems Corp. v. Lewis*, 138 S. Ct.
1612 (2018) and the FAA, 9 U.S.C. §§ 2, 3, 4, arbitration agreements with collective action waivers
are presumptively valid. Therefore, absent evidence to the contrary, the agreements should be
enforced.[3] Here, there is absolutely no evidence that the agreements are unenforceable. Wells
Fargo is able to delineate the Arbitration HMCs from the HMCs with relative ease and is prepared
to move forward swiftly in getting notices out. Providing notice to individuals who have no ability

---

[3] Under the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr.
Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), "any doubts concerning the scope of arbitrable issues
should be resolved in favor of arbitration," *id*. at 24–25, 103 S.Ct. 927. *See Lamps Plus, Inc. v. Var*ela, —— U.S. ——
–, 139 S. Ct. 1407, 1416–17, 203 L.Ed.2d 636 (2019) (recognizing presumption that judges are authorized "to
resolve certain 'gateway' questions, such as 'whether the parties have a valid arbitration agreement at all or whether
a concededly binding arbitration clause applies to a certain type of controversy." Under Pennsylvania law,
formation of a contract requires (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite
to be enforced, and (3) consideration. In the employment context, arbitration agreements will be upheld when they
are "specific enough (i.e. unambiguous) to cover the employee's claims" and "the employee has expressly agreed to
abide by the terms of [the] agreement. *" Kirleis v. Dickie, McCamey & Chilcote, P.C.* 560 F.3d 156, 160-61 (3d
Cir. 2009). Based on the clear language of the arbitration agreements, at this stage, Wells Fargo has sufficiently
shown the Arbitration HMCs claims are subject to arbitration. The parties to that agreement agreed to be mutually
bound thereby and the agreement is a condition of employment. The Court appreciates that Plaintiffs may have
specific discovery related to this issue, should the second stage be reached, and decertification sought.

to join this lawsuit cannot advance the purpose of Section 216 because those individuals are not potential plaintiffs.

A district court may certify an order for interlocutory appeal if it determines that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Section 1292(b) therefore sets out three factors that district courts consider before granting leave to file an immediate interlocutory appeal: (1) whether the order involves a controlling question of law; (2) whether there is a substantial ground for difference of opinion as to that question of law; and (3) whether immediate appeal from the order would materially advance the ultimate termination of the litigation. *See Koerner v. Hankins*, 2012 WL 464871, at *1-2 (W.D. Pa. Feb. 13, 2012). The party seeking interlocutory appeal bears the burden of proving that all three of the certification factors have been met, though even if all statutory criteria are met, the decision to grant certification remains wholly within the discretion of the district court. *Id.* at *2 (citing *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976)). In *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974), the court held, "controlling" means serious to the conduct of the litigation, either practically or legally. . . . And on the practical level, saving of time of the district court and of expense to the litigants was deemed by the sponsors to be a highly relevant factor." *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (deciding in interlocutory appeal whether and to what extent district courts could facilitate notice to potential participants in collective action); *Sperling v. Hoffman-La Roche*, 862 F.2d 439, 440, 443-44 (3d Cir. 1988) (accepting interlocutory appeal under § 1292(b) to consider the same issue). *See also JPMorgan*, 916 F.3d at 504 & n.23 ("*Hoffmann-La Roche* does not give district courts discretion to send or require notice of a pending FLSA collective action to employees who are unable to join the action because of binding arbitration agreements"; "[t]he same applies to requiring the employer to provide contact information."). There is legal uncertainty about whether

7

the enforceability of an arbitration agreement involves a "merits based" inquiry. The certification of the interlocutory appeal will streamline the case, advance the course of the litigation, and avoid confusion which would arise once Arbitration HMCs receive their notices, as well as clarify the proper procedure district courts in this Circuit should follow when faced with similar situations.

Next, we address the request for a stay. To determine whether Defendant is entitled to a stay pending appeal pursuant to F.R.C.P. 62(d), this Court must assess: (1) whether he has made a strong showing that he is likely to succeed on the merits; (2) whether he will be irreparably injured absent the stay; (3) whether issuance of a stay will substantially injure another party; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). Recent holdings by the appeals courts in other Circuits lead to the conclusion that Wells Fargo has a reasonable likelihood of success on the merits because employees who entered into such agreements likely have no ability to participate in this case. Irreparable injury will occur if the stay is not granted because if the stay is not issued, and notice to thousands of people in the collective is effectuated, those with arbitration awards may not join the lawsuit. Absent a stay, a misleading notice will have gone out to the Arbitration HMCs, thus mooting the appeal. Plaintiffs will not be injured by the delay while Wells Fargo seeks appellate relief because the statute of limitations is tolled as to the entire collective. In addition, the public has an interest in obtaining clarity on the interaction between the FLSA and the FAA, and the circumstances under which notice is required where potential opt-ins to a collective action have signed waivers of their ability to participate in such a lawsuit. For these reasons, the balance of equities weighs in favor of granting a stay while Wells Fargo seeks appellate review.

## **ORDER**

AND NOW, to wit, this 20th day of April, 2021, for the reasons set forth herein, it is hereby ORDERED that:

1)   Defendant Wells Fargo Bank, N.A.'s expedited motion to stay the deadline for production of contact information for Home Mortgage Consultants ("HMCs"), or, alternatively, arbitration HMCs,  GRANTED IN PART and DENIED IN PART. It is Granted with respect to the deadline to produce contact information as to Arbitration HMCs and DENIED with respect to the deadline to produce contact information for non-Arbitration HMCs.

Accordingly, the Court hereby ORDERS that the portion of the Court's March 15, 2021 rulings (ECF Nos. 127 and 128) requiring Wells Fargo to produce the contact information for the Arbitration HMCs and permitting Plaintiff's counsel to send notice to the Arbitration HMCs is stayed while any request for relief (including an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) or a petition for writ of mandamus) is pending before the United States Court of Appeals for the Third Circuit. Wells Fargo will produce the contact information for non-arbitration HMCs on April 21, 2021, and notice to non-arbitration HMCs may proceed as previously ordered in the Court's March 15, 2021 orders.

2)   Wells Fargo's Expedited Motion to Certify Interlocutory Appeal under 28 U.S.C. §1292(b) (ECF No. 131) be and the same is hereby GRANTED.

BY THE COURT:

s/ *Robert J. Colville*
Robert J. Colville
United States District Judge

Dated:  April 20, 2021
cc:  all counsel of record