Case No. 21-2734

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

**SANDRA BRUNO,**

on behalf of herself and similarly situated employees,

*Plaintiff-Appellee*

v.

**WELLS FARGO BANK, N.A.,**

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Pennsylvania
Civil Action No. 2:19-cv-00587-RJC
(District Judge Robert J. Colville)

### PLAINTIFF-APPELLEE'S BRIEF

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, New York 10005
bschaffer@fslawfirm.com
dcimera@fslawfirm.com
Tel: (212) 300-0375
Fax: (212) 481-1333

**CHIVERS LLP**
Jeffrey W. Chivers
Theodore I. Rostow
300 Cadman Plaza West, 12th Floor
Brooklyn, New York  11201
jwc@chivers.com
tir@chivers.com
Tel: (718) 210-9825
Fax: (212) 202-5097

**THE EMPLOYMENT RIGHTS GROUP, LLC**
Joseph H. Chivers (PA ID No. 39184)
100 First Avenue, Suite 650
Pittsburgh, Pennsylvania 15222
jchivers@employmentrightsgroup.com
Tel: (412) 227-0763
Fax: (412) 774-1994

### TABLE OF CONTENTS

STATEMENT OF THE ISSUES.................................................................1

STATEMENT OF THE CASE................................................................2

   A. Parties and Claims ....................................................................2

   B. Procedural Background ..............................................................3

   C. The Court's Order on Conditional Certification ..........................4

   D. The Court's Order Permitting Wells Fargo
      to Petition for Interlocutory Appeal ......................................5

STATEMENT OF RELATED CASES AND PROCEEDINGS .............................7

STANDARD OF REVIEW .................................................................7

SUMMARY OF ARGUMENT ...............................................................8

ARGUMENT ..............................................................................11

  I.  The alleged arbitration agreements cannot be adjudicated
      in the absence of the employees who are purportedly bound by them.......11

  II.  This Court should affirm the District Court's order
      authorizing notice to all HMCs..................................................15

      A.  This Court's conditional-certification standard dictates affirmance of
         the District Court's order authorizing notice to all HMCs ................15

      B.  The District Court's order authorizing notice to all HMCs
         is consistent with the Supreme Court's opinion
         in *Hoffmann-La Roche* .......................................................19

      C.  Sending notice to all HMCs would not violate
         the Federal Arbitration Act ...................................................28

      D.  Sending notice to all HMCs would not violate the "federal policy"
         favoring arbitration.  In fact, it would violate Supreme Court
         precedent to apply any federal policy or presumption in favor of
         arbitration in this context ...................................................30

E.    The panels in *JPMorgan* (CA5) and *Bigger* (CA7) made crucial errors in their analyses, as numerous district courts have recognized in the wake of those decisions ................................35

III. Free-standing policy interests, if the Court considers them, weigh strongly in favor of affirming the District Court's order authorizing notice to all HMCs....................................................................46

A.    The Chambers' free-standing policy arguments are unpersuasive ....46

B.    The countervailing policy interests weigh strongly in favor of affirmance ..........................................................................................50

CONCLUSION ....................................................................................53

# TABLE OF AUTHORITIES

## *Cases*

*Barone v. Laz Parking Ltd, LLC,*
  2019 U.S. Dist. LEXIS 181126 (D. Conn. Oct. 20, 2019) ..................... 18, 37

*Bigger v. Facebook, Inc.,*
  947 F.3d 1043 (7th Cir. 2020) .............................................. *passim*

*Caddick v. Tasty Baking Co.,*
  2020 U.S. Dist. LEXIS 14716 (E.D. Pa. Jan. 24, 2020) ................................18

*Camesi v. Univ. of Pittsburgh Med. Ctr.,*
  729 F.3d 239 (3d Cir. 2013) ........................................................16

*Delara v. Diamond Resorts Int'l Mktg.,*
  2020 U.S. Dist. LEXIS 75803 (D. Nev. Apr. 30, 2020) ........ 26–27, 45, 50, 52

*Epic Sys. Corp. v. Lewis,*
  138 S. Ct. 1612 (2018) ..................................................................30

*Gauzza v. Prospect Med. Holdings, Inc.,*
  2018 U.S. Dist. LEXIS 184306 (E.D. Pa. Oct. 26, 2018) ..............................18

*Goldman, Sachs & Co. v. City of Reno,*
  747 F.3d 733 (9th Cir. 2014) ........................................................34

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.,*
  764 F.3d 210 (2d Cir. 2014) .........................................................34

*Gonzalez v. Diamond Resorts Int'l Mktg.,*
  2019 U.S. Dist. LEXIS 126434 (D. Nev. July 29, 2019) ........................ 18, 27

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
  561 U.S. 287 (2010) ............................................................... *passim*

*Grove v. Meltech, Inc.,*
  2020 U.S. Dist. LEXIS 228435 (D. Neb. Dec. 3, 2020) ................................18

*Halle v. W. Penn Allegheny Health Sys. Inc.,*
  842 F.3d 215 (3d Cir. 2016) ............................................... 4, 16, 27

*Herrera v. EOS IT Mgmt. Sols., Inc.*,
  2020 U.S. Dist. LEXIS 235832 (N.D. Cal. Dec. 14, 2020) ...........................18

*Hoffmann-La Roche Inc v. Sperling*,
  493 U.S. 165 (1989) .............................................................. *passim*

*In re JPMorgan Chase & Co.*,
  916 F.3d 494 (5th Cir. 2019) .................................................. *passim*

*Lancaster v. FQSR*,
  2020 U.S. Dist. LEXIS 166285 (D. Md. Sep. 11, 2020) .................. 18, 25, 44

*Lijun Geng v. Shu Han Ju Rest. II Corp.*,
  2019 U.S. Dist. LEXIS 154246 (S.D.N.Y. Sep. 6, 2019) ...............................18

*Maddy v. GE*,
  59 F. Supp. 3d 675 (D.N.J. 2014) ...................................................18

*Meyer v. Panera Bread Co.*,
  344 F. Supp. 3d 193 (D.D.C. 2018) ................................................18

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ...................................................................12

*Pogue v. Chisholm Energy Operating, LLC*,
  2021 U.S. Dist. LEXIS 237107 (D.N.M. Dec. 10, 2021) ..............................18

*Prosser v. Prosser*,
  186 F.3d 403 (3d Cir. 1999) ..........................................................12

*Romero v. Clean Harbors Surface Rentals USA, Inc.*,
  404 F. Supp. 3d 529 (D. Mass. 2019) .......................................... 37, 42, 50, 52

*SEPTA v. Orrstown Fin. Servs.*,
  12 F.4th 337 (3d Cir. 2021) .........................................................1, 7

*Symczyk v. Genesis Healthcare Corp.*,
  656 F.3d 189 (3d Cir. 2011) ..........................................................16

*Taylor v. Pilot Corp.*,
  697 F. App'x 854 (6th Cir. 2017) ..................................................18

*Weckesser v. Knight Enterprises S.E., LLC*,
   2018 WL 4087931 (D.S.C. Aug. 27, 2018) ....................................................18

*Zavala v. Wal Mart Stores, Inc.*,
   691 F.3d 527 (3d Cir. 2012) .................................................................. *passim*

**Statutes and Rules**

Declaratory Judgment Act, 28 U.S.C. § 2201 ....................................................12

Federal Arbitration Act, 9 U.S.C. §§ 1–16 ................................................. 29, 30

Federal Rule of Civil Procedure 1 .....................................................................12

Federal Rule of Civil Procedure 4 .....................................................................12

**Constitutional Provisions**

U.S. Constitution, Amendment V......................................................... 12, 20, 33

## STATEMENT OF THE ISSUES

**Standard of Review.**  Whether the District Court had discretion to authorize

the sending of notice to all home-mortgage consultants ("HMCs"), including those

whom Wells Fargo claims are bound by arbitration agreements, is a legal question

that is subject to *de novo* review.  *See SEPTA v. Orrstown Fin. Servs.,* 12 F.4th 337,

344 (3d Cir. 2021).  To the extent the District Court had such discretion as a legal

matter, the District Court's decision to authorize the sending of notice to all HMCs,

including those whom Wells Fargo claims are bound by arbitration agreements, is

reviewed for abuse of discretion.  *See Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527,

535 (3d Cir. 2012).

**Statement of Issue.**  Plaintiff Sandra Bruno disagrees with Wells Fargo's

formulation of the issue presented in this appeal.  For the reasons explained below,

*infra* pp. 11–14 & n.3, the issue presented in this appeal is:

> When a plaintiff moves for conditional certification of a collective
> action under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C.
> § 216(b), and makes the showing required under *Zavala v. Wal Mart
> Stores, Inc.*, 691 F.3d 527 (3d Cir. 2012), that other employees were
> affected by the same employment policies that are challenged as
> unlawful, but the employer asserts in opposition that some of the
> employees so affected are bound by arbitration agreements, does the
> district court have the discretion to authorize the sending of notice to
> all employees for whom plaintiffs have made the step-one *Zavala*
> showing and defer the employer's invocation of alleged arbitration
> agreements until after the notice process has completed?

1

Wells Fargo raised this issue at JA118–19 and JA184–87, and the District Court ruled on it at JA12–13 and JA15–16.

## STATEMENT OF THE CASE

### A. Parties and Claims

Defendant-Appellant Wells Fargo, N.A., is a national bank that sells, among other things, home mortgages to customers. *See* JA45–46. Wells Fargo employs home-mortgage consultants ("HMCs") who originate mortgage loans for home buyers. *See* JA126. Since July 15, 2017, Wells Fargo has employed more than 7,800 individuals as HMCs throughout the United States. *See* JA191.

Named Plaintiff Sandra Bruno, on behalf of herself and similarly situated HMCs, alleges that Wells Fargo implemented certain policies that were in violation of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq.* First, Bruno alleges and has submitted evidence showing that Wells Fargo engineered its incentive compensation plan to deprive HMCs of their overtime wages by extracting recoupments from them. *See* JA5–8. Second, Bruno alleges and has submitted evidence showing that Wells Fargo employed a compensation policy that failed to include certain payments in HMC overtime calculations. *See* JA8. Third, Bruno alleges and has submitted evidence showing that Wells Fargo prevented Bruno and other HMCs from recording all the time they worked. *See* JA8–9.

## B. Procedural Background

Bruno commenced the underlying action by filing a complaint in the District Court. *See* JA166. The parties then conducted a phase of discovery concerning the extent to which Wells Fargo's other HMCs were subject to the same policies as Bruno and the six initial opt-in plaintiffs. *See id.* During this period of discovery, in July 2020, Bruno filed a motion for conditional certification under the FLSA, 29 U.S.C. § 216(b). *See id.*; JA77–96. In response, Wells Fargo sought and received an additional four months to perform one-sided discovery, during which Wells Fargo took depositions of several opt-in plaintiffs and prepared its opposition to Bruno's motion for conditional certification. *See* JA166; ECF No. 106 at 5.

On December 2, 2020, Wells Fargo filed an opposition to Bruno's motion for conditional certification. *See* JA124. By this time, the first discovery period had expired. *See* JA149; District Court Docket No. 87. Per the case management order, the District Court planned to establish one or more additional phases of discovery "pending the Court's ruling on Plaintiffs' Motion for Conditional Certification and to Facilitate Notice." District Court Docket No. 87 at 3.

In its opposition to Bruno's motion for conditional certification, Wells Fargo raised the claim that an unspecified number of HMCs are bound by arbitration agreements and thus cannot pursue their FLSA claims in the underlying litigation. *See* JA119, 138. In opposing Bruno's motion, Wells Fargo did not submit the actual

3

arbitration agreements to the Court, but rather submitted a single redacted agreement, JA145, along with a declaration from Wells Fargo manager Michelle Wilke stating only that the agreement was "applicable to team members hired after December 11, 2015." JA138. The declaration, executed on December 2, 2020, further stated that "[t]he arbitration agreements entered into by team members after December 11, 2015, are subject to the Federal Arbitration Act, cover claims for wages, including Fair Labor Standards Act claims, and contain class, collective, and representative action waivers." *Id.* Wells Fargo left unstated the extent to which Wells Fargo employees hired after December 11, 2015 actually executed the agreement. Wells Fargo also produced no names or contact information of any employee that it maintained was bound by an arbitration agreement.

### C. The Court's Order on Conditional Certification

On March 15, 2021, the District Court entered an order that, *inter alia*, granted Bruno's motion for conditional certification. *See* JA15–16. In its analysis, the District Court followed the standards for conditional certification that have been established through this Court's various precedential decisions. *See* JA4 (citing *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016); *Zavala*, 691 F.3d at 536 & n.4). Under the first step of this Court's two-step certification framework, the District Court found that Bruno made the required "modest factual showing" that all of Wells Fargo's HMCs were subject to the same

policies that Bruno contends violate the FLSA. The District Court found the modest factual showing was made for Wells Fargo's policy of recapturing the HMCs' overtime wages, JA8, its policies for computing overtime compensation, JA8, and its timekeeping policies, JA9.

The District Court also addressed Wells Fargo's claim that certain HMCs are bound by arbitration agreements. *See* JA12–13. Consistent with decisions in this Circuit, the District Court ruled that Wells Fargo's argument about the alleged arbitration agreements was "premature," as the District Court has "no ability to determine whether certain arbitration agreements are enforceable against potential opt-in plaintiffs, and to hold otherwise would cause further delays in the FLSA notice process." JA12–13.

### D. The Court's Order Permitting Wells Fargo to Petition for Interlocutory Appeal

On March 26, 2021, Wells Fargo filed a motion under 28 U.S.C. § 1292(b) asking the District Court to make a certification for Wells Fargo to petition this Court for an interlocutory appeal. District Court Docket Nos. 131, 132. In support of that motion, Wells Fargo served a second declaration from Wells Fargo manager Michelle Wilke, executed on March 26, 2021. JA191. That second declaration stated that the Wells Fargo Employee Handbook "makes clear that 'All employees hired on or after December 11, 2015 are required to sign an Arbitration Agreement in which the employee and Wells Fargo mutually agree to final and binding

arbitration of employment disputes . . . .'" JA190–91.  Like the first declaration, the second Wilke declaration did not identify the employees who had allegedly signed arbitration agreements and did not provide any actual signed agreements.  JA191.

On April 20, 2021 the District Court entered an order that resolved two pending motions by Wells Fargo, including Wells Fargo's motion under 28 U.S.C. § 1292(b).  *See* JA17–25.  In its opinion, the District Court concluded there is legal uncertainty in this Circuit whether, in a putative collective action under the FLSA, a district court should resolve an employer's assertion that certain employees are bound by arbitration agreements before or after the conditional-certification stage. *See* JA 23–24.  The District Court also observed that "Wells Fargo then argued the subsequent voluntary withdrawal of opt-in Plaintiffs consent forms (O'Connell and Aguera)[] lends credence to its position that Plaintiffs do not seriously contest the validity" of the alleged arbitration agreements.  JA21.  Bruno has consistently maintained, however, that a challenge to the validity of alleged arbitration agreements that supposedly bind individuals not before the District Court must be deferred until after those individuals have received notice and an opportunity to be heard.  *See* JA161–63 (Bruno's reply brief in support of conditional certification);

District Court Docket No. 138 at 10 & n.4, 12 & n.5 (Bruno's opposition to Wells Fargo's motion to certify issue for interlocutory appeal).[1]

In this order, the District Court also confirmed that its earlier order authorizing notice to all HMCs, JA15–16, remains the governing order on authorizing notice to the HMCs. Specifically, the District Court acknowledged that, absent a stay of its order authorizing notice to the "Arbitration HMCs," notice would be distributed to them, JA24, thus confirming that the order authorizing notice to all HMCs, JA15–16, is the District Court's operative order on the matter.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously, and Plaintiff Bruno is not aware of any other case or proceeding that is related to this case.

## STANDARD OF REVIEW

The question whether the District Court had discretion to authorize the sending of notice to all HMCs, including those whom Wells Fargo claims are bound by arbitration agreements, is a legal question that is subject to *de novo* review. *See SEPTA v. Orrstown Fin. Servs.*, 12 F.4th 337, 344 (3d Cir. 2021). To the extent the District Court had such discretion as a legal matter, the District Court's decision to

---

[1] As detailed below, *infra* pp. 13–14, Plaintiff Bruno has not conceded that the alleged arbitration agreements are valid as to any individuals who are not parties in the District Court.

authorize the sending of notice to all HMCs, including those whom Wells Fargo claims are bound by arbitration agreements, is subject to review for abuse of discretion. *See Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 535 (3d Cir. 2012).

## SUMMARY OF ARGUMENT

In the District Court, Plaintiff Sandra Bruno submitted evidence suggesting that Wells Fargo has maintained compensation and timekeeping policies that have caused more than 7,800 home-mortgage consultants ("HMCs") to not be paid the overtime wages they are owed under the FLSA. Based on that showing, and under this Court's clear standards for conditional certification under the FLSA, the District Court entered an order authorizing the sending of notice to all the HMCs who have been affected by Wells Fargo's compensation and timekeeping policies, including the 3,900 or so HMCs whom Wells Fargo asserts are bound by agreements to arbitrate their claims.

In this interlocutory appeal, Wells Fargo asks this Court to reverse the District Court's conditional certification order as to the HMCs whom Wells Fargo claims are bound by arbitration agreements. Wells Fargo urges this Court to follow recent decisions by the Fifth and Seventh Circuits, in which those Circuits narrowed the discretion of their district courts to manage FLSA collective actions by establishing specialized frameworks for deciding when FLSA notices can be sent to similarly situated employees whom the employer claims signed arbitration agreements. Wells

Fargo further contends the District Court has already determined the HMCs in question are in fact bound by such arbitration agreements, such that this Court should rule outright that the District Court is prohibited from authorizing notice to any of those HMCs.

This Court should reject the arguments presented by Wells Fargo, adhere to its well-established standards for conditional certification, and affirm the District Court's order authorizing notice to all the HMCs.

*First*, as a threshold matter, this Court must reject Wells Fargo's contention that the District Court has already determined that the HMCs in question are in fact bound by arbitration agreements. Sustaining that contention would violate both their constitutional rights to due process and the procedural rules governing declaratory judgments.

*Second*, this Court can and should decide this appeal based on its own precedential decisions regarding conditional certification. Tellingly, Wells Fargo omits *all* of this Court's conditional-certification precedents from its opening brief, urging this Court to instead look back thirty years to the Supreme Court's decision in *Hoffmann-La Roche Inc v. Sperling*, 493 U.S. 165 (1989). But this Court has already issued several precedential decisions implementing *Hoffmann-La Roche* that establish clear standards for conditional certification, which dictate a straightforward affirmance in this appeal.

*Third*, even if this Court does seek guidance from *Hoffmann-La Roche*, it should readily conclude that the District Court's order is firmly supported by that decision. The District Court's order is consistent with the guidelines set down by the majority in *Hoffmann-La Roche* and promotes the key interests of pooling resources, avoiding piecemeal litigation, and ensuring "timely" notice that animated the *Hoffmann-La Roche* decision.

*Fourth*, the Court should reject Wells Fargo's and the Chamber of Commerce's contentions that the Federal Arbitration Act ("FAA") or the "federal policy" favoring arbitration proscribe the District Court's order. The opposite is true. To the extent the FAA says anything about this appeal, it merely reinforces the need for employees to receive notice and an opportunity to be heard before their alleged arbitration agreements are adjudicated. As for the federal policy favoring arbitration, the Supreme Court's decision in *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010), makes clear that the federal policy favoring arbitration has absolutely no application here. Indeed, that the "federal policy" favoring arbitration does *not* apply in this context confirms this Court should not create an arbitration exception to its conditional-certification standard.

*Fifth*, the Court should not deviate from its precedential conditional-certification opinions based on the recent decisions by the Fifth and Seventh Circuits. Those decisions do not adhere to the Supreme Court's guidance in the

majority opinion of *Hoffmann-La Roche*, and they create their own swath of legal and practical concerns, as numerous district courts have observed in the wake of those decisions. Those decisions also expose the collective-action process to abuses by employers, create some of the very problems that *Hoffmann-La Roche* aims to prevent, and improperly treat arbitration as exceptional where the federal policy favoring arbitration does not apply.

*Sixth*, the Court should not be swayed by the myriad policy arguments made by the Chamber of Commerce in its *amicus* brief. Those arguments are unmoored from the governing legal doctrine, largely based on a federal policy that does not apply here, and are otherwise unsubstantiated and unpersuasive.

At bottom, this Court should not carve an arbitration exception into its settled standards for conditional certification. The District Court properly granted Plaintiff Bruno's motion for conditional certification under those clear standards as to all HMCs, and this Court should affirm on the same grounds.

## ARGUMENT

### I.   The alleged arbitration agreements cannot be adjudicated in the absence of the employees who are purportedly bound by them.

In its statement of the issue on appeal, Wells Fargo implies that the District Court has already determined that each of more than 3,900 individuals has "waived their right to participate in a collective action through a valid and enforceable arbitration agreement." WF Br. at 2.

This implied premise must not be sustained by this Court.  In the order that Wells Fargo appeals, JA1–16, the District Court ruled that Wells Fargo's assertion that some HMCs are bound by arbitration agreements is "premature, and [the District Court] ha[s] no ability to determine whether certain arbitration agreements are enforceable against potential opt-in plaintiffs, and to hold otherwise would cause further delays in the FLSA notice process."  JA13.

Moreover, any ruling by the District Court that purported to find that the alleged arbitration agreements are valid and enforceable against individuals who are not before the District Court would violate the U.S. Constitution and the procedural rules governing declaratory judgments.  First, a ruling to that effect would violate the absent individuals' rights to due process under the Fifth Amendment:  the adverse determination of a person's legal rights without their ever having received notice and an opportunity to be heard is a classic due process violation.  *See, e.g.*, *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *Prosser v. Prosser*, 186 F.3d 403, 406 (3d Cir. 1999).  Second, such a ruling would violate the procedural rules governing declaratory judgments.  A ruling by the District Court that determined the validity and enforceability of alleged arbitration agreements as to individuals not before the District Court would in effect be a judicial declaration of their legal rights.  To obtain such declaratory relief, Wells Fargo would need to file a third-party complaint against the absent employees, name them as defendants,

and adhere to the Federal Rules of Civil Procedure (including the service of process) to pursue that relief. *See* 28 U.S.C. § 2201 (requiring "the filing of an appropriate pleading" to seek a declaratory judgment); Fed. R. Civ. P. 1 (applying the Federal Rules of Civil Procedure to "all civil actions"); Fed. R. Civ. P. 4 (requiring service of process for third-party complaints). Wells Fargo has not adhered to any of that process, and the absent employees have not received notice of Wells Fargo's efforts to obtain a judicial declaration of their legal rights. Under both the U.S. Constitution and the rules governing declaratory judgments, the District Court was and is prohibited from finding that the alleged arbitration agreements are valid and enforceable against individuals who are not before the District Court.

Relatedly, Wells Fargo is incorrect to contend that Plaintiff Bruno concedes that all the HMCs that Wells Fargo claims are bound to arbitration are, in fact, bound to arbitrate. Plaintiff Bruno has made no such concession.[2] In the District Court, Plaintiff Bruno took the position that, under this Court's decision in *Zavala*, the assertions that Wells Fargo made in opposition to Plaintiff's motion for conditional certification—*i.e.*, that an at-the-time unspecified number of HMCs were bound by

---

[2] Similarly, Wells Fargo mischaracterizes the District Court's April 20, 2021 memorandum order. Wells Fargo states that "the District Court noted that Plaintiff does 'not seriously contest the validity of said arbitration agreements' . . . ." WF Br. at 7. But in the passage, the District Court is summarizing Wells Fargo's arguments. *See* JA21 ("Wells Fargo ***then argued that*** . . . ." (emphasis added)).

13

arbitration agreements—should be tested through discovery and, if necessary, motions practice *after* notice was sent. *See* JA161–62. As Bruno explained to the District Court, any determination on the validity and enforceability of alleged arbitration agreements purportedly signed by HMCs not before the Court was premature because the persons who could adequately mount that challenge were neither identified by Wells Fargo nor notified of the proceeding. *See* JA162. And, in its order granting conditional certification, the District Court *agreed* with Plaintiff Bruno on this point, concluding that a determination of whether the HMCs were in fact bound by arbitration agreements was "premature." JA13. Put simply, Plaintiff Bruno has not conceded that any absent employees are in fact bound by arbitration agreements. *See* JA162; *see also* District Court Docket No. 138 at 10 & n.4, 12 & n.5.

For these reasons, this Court should conclude that the alleged arbitration agreements have not been, and cannot be, adjudicated in the absence of the employees who are purportedly bound by them.[3]

---

[3] This also means this Court should not adopt Wells Fargo's statement of the issue presented, WF Br. at 2, because that issue statement implies that the District Court made findings that it was prohibited from making. The Court should instead adopt the issue as presented above in Plaintiff-Appellee's Statement of the Issue. *See supra* pp. 1–2.

**II.    This Court should affirm the District Court's order authorizing notice to all HMCs.**

    **A. This Court's conditional-certification standard dictates affirmance of the District Court's order authorizing notice to all HMCs.**

The District Court authorized notice to all HMCs because, under this Court's precedential decisions, all HMCs are potential plaintiffs to whom notice may be sent. The District Court reached its decision based on a straightforward and correct application of this Court's two-step certification framework, and none of the arguments made by Wells Fargo rebuts that conclusion.

In its opening brief, Wells Fargo makes various arguments under the Supreme Court's decision in *Hoffmann-La Roche*. *See* WF Br. at 11–13,16–21. Yet Wells Fargo does not cite a single one of this Court's precedential decisions interpreting and implementing *Hoffmann-La Roche* to clarify the law in this Circuit. *See generally* WF Br. (not citing any Third Circuit decisions addressing certification under the FLSA).

Contrary to Wells Fargo's portrayal of the legal landscape, this Court has issued numerous precedential decisions that implement *Hoffmann-La Roche* and clarify the legal standards that district courts in the Third Circuit should apply to determine whether to "conditionally" and "finally" certify a collective action under the FLSA.

In *Zavala v. Wal-Mart Stores, Inc.*, this Court examined the "two-step" approach to certification of collective actions under the FLSA. 691 F.3d 527, 535–36 (3d Cir. 2012). Looking back to its prior decisions, this Court in *Zavala* "affirmed" the two-step approach to certification and emphasized that "'conditional certification' is not really a certification," but rather is "the district court's exercise of its discretionary power, upheld in *Hoffmann-LaRoche*, to facilitate the sending of notice to potential class members." *Zavala*, 691 F.3d at 536 (quoting *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011)).

Building on *Zavala*, this Court in *Camesi* and *Halle* further clarified the issue before district courts at the conditional-certification phase and the "potential opt-in plaintiffs" to whom notice should be sent. At the conditional-certification phase, district courts apply a "'fairly lenient standard' . . . mak[ing] a preliminary determination as to whether the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (quoting *Zavala*, 691 F.3d at 536 & n.4). "If the plaintiffs have satisfied their burden, the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Id.* (quoting *Zavala*, 691 F.3d at 536).

This Court's precedential decisions also make absolutely clear who constitute the "potential opt-in plaintiffs," *Camesi*, 729 F.3d at 243, at the conditional-certification stage.  The "potential opt-in plaintiffs" at this stage are the individuals for whom "the named plaintiffs have made a 'modest factual showing' that the [individuals] are 'similarly situated.'" *Camesi*, 729 F.3d at 243 (quoting *Zavala*, 691 F.3d at 536 & n.4).  And this Court has ruled that employees are "similarly situated" for purposes of conditional-certification if the named plaintiff shows, by more than mere speculation, "a factual nexus between the manner in which the employer's alleged policy affected [the named plaintiff] and the manner in which it affected [the other employees]." *Zavala*, 691 F.3d at 536 n.4.

In other words, this Court has already established a clear legal standard for determining the individuals to whom notice may be sent pursuant to a district court's "discretionary power, upheld in *Hoffmann-LaRoche*, to facilitate the sending of notice to potential class members." *Zavala*, 691 F.3d at 536.  Specifically, this Court has ruled that district courts in the Third Circuit are authorized to facilitate notice to individuals for whom the named plaintiff shows, by evidence greater than mere speculation, "a factual nexus between the manner in which the employer's alleged policy affected [the named plaintiff] and the manner in which it affected [the other employees]." *Zavala*, 691 F.3d at 536 n.4.

17

This legal standard, which implements *Hoffmann-La Roche* in the Third Circuit (and which Wells Fargo has simply omitted from its brief), provides a straightforward resolution to the question presented in this appeal. Plaintiff Bruno submitted evidence sufficient to show that all HMCs—including those who are supposedly bound by arbitration agreements—were subjected to the same policies and practices that are alleged to violate the FLSA. *See* JA5–11. Based on that evidence, the District Court correctly ruled there was a "factual nexus" between the manner in which Wells Fargo's alleged policies affected Plaintiff Bruno and the manner in which they affected *all* HMCs. *See id*. Nothing more is required at the conditional certification stage. This Court can and should adhere to its prior decisions and affirm the District Court's order authorizing notice to all HMCs.

This appeal really should be this straightforward. Indeed, based on this Court's clear standard for conditional certification, district courts in this Circuit have routinely deferred an employer's assertion of arbitration agreements until after the notice phase. *See, e.g.*, *Caddick v. Tasty Baking Co.*, 2020 U.S. Dist. LEXIS 14716, at *4–5, *7–8 (E.D. Pa. Jan. 24, 2020); *Gauzza v. Prospect Med. Holdings, Inc.*, 2018 U.S. Dist. LEXIS 184306, at *6–7 (E.D. Pa. Oct. 26, 2018); *Maddy v. GE*, 59 F. Supp. 3d 675, 682, 685 & n.7 (D.N.J. 2014).[4]

---

[4] District courts applying the two-step framework outside the Third Circuit likewise routinely distribute notice to employees who may have signed arbitration agreements, recognizing that such issues are properly resolved after opt-ins have

In asking this Court to reverse the District Court's order authorizing notice to all HMCs who have claims stemming from the same policies and practices as Plaintiff Bruno, Wells Fargo is effectively asking this Court to carve an exception into the legal standard for conditional certification in this Circuit. Even assuming this Court can take that step without ruling *en banc*, it should not do so.

**B.** **The District Court's order authorizing notice to all HMCs is consistent with the Supreme Court's opinion in *Hoffmann-La Roche*.**

As noted above, this Court has already implemented the Supreme Court's decision in *Hoffmann-La Roche* by providing a clear standard for conditional certification. There is no reason to turn the doctrinal clock back thirty years to

---

joined litigation. *See, e.g., Herrera v. EOS IT Mgmt. Sols., Inc.*, No. 20-CV-01093-LHK, 2020 U.S. Dist. LEXIS 235832, at *28-29 (N.D. Cal. Dec. 14, 2020); *Grove v. Meltech, Inc.*, No. 8:20CV193, 2020 U.S. Dist. LEXIS 228435, at *10 (D. Neb. Dec. 3, 2020); *Lancaster v. FQSR*, Civil Action No. TDC-19-2632, 2020 U.S. Dist. LEXIS 166285, at *23 (D. Md. Sep. 11, 2020); *Barone v. Laz Parking Ltd, LLC*, No. 3:17-CV-01545(VLB), 2019 U.S. Dist. LEXIS 181126, at *16 (D. Conn. Oct. 20, 2019); *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-cv-12220 (PAE) (RWL), 2019 U.S. Dist. LEXIS 154246, at *44 (S.D.N.Y. Sep. 6, 2019); *Gonzalez v. Diamond Resorts Int'l Mktg.*, No. 2:18-cv-00979-APG-CWH, 2019 U.S. Dist. LEXIS 126434, at *14 (D. Nev. July 29, 2019); *Weckesser v. Knight Enterprises S.E., LLC*, No. 2:16-CV-02053, 2018 WL 4087931, at *3 (D.S.C. Aug. 27, 2018); *Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 206 (D.D.C. 2018); *see also, e.g., Taylor v. Pilot Corp.*, 697 F. App'x 854, 860 (6th Cir. 2017) (affirming district court's denial of motion to stay following authorization of notice to potential plaintiffs purportedly subject to arbitration agreement); *Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-cv-00580-KWR-KK, 2021 U.S. Dist. LEXIS 237107, at *24 (D.N.M. Dec. 10, 2021).

implement again the broad principles in *Hoffmann-La Roche.* This Court has already done that doctrinal work, the results are embodied in its conditional-certification standard, and that standard leads directly to affirmance of the District Court's order authorizing notice to all HMCs. *See supra* pp. 15–19.

The only reason presented, for this Court to return to *Hoffmann-La Roche* for guidance, is the notion that there is something special about arbitration agreements. This supposed exceptionalism for arbitration agreements permeates the briefs filed by Wells Fargo and the Chamber of Commerce. *See, e.g.*, WF Br. at 14; Chamber Br. at 2, 5, 10, 19. But this proposed exceptionalism has been squarely foreclosed by the Supreme Court in this context. Contrary to Wells Fargo's and the Chambers' arguments, the "federal policy" favoring arbitration absolutely does not apply to the question whether the more than 3,900 HMCs are in fact bound by arbitration agreements. *See infra* pp. 30–35. Nor does that "federal policy" have any bearing on *when* a district court should determine issues of arbitrability. *See infra* pp. 30–35. Rather, as a matter of established Supreme Court precedent, the "federal policy" favoring arbitration applies only to interpreting the *scope* of an arbitration agreement, and that policy cannot be applied until there has been "***a judicial conclusion*** that arbitration of a particular dispute is what ***the parties*** intended because their express agreement to arbitrate was validly formed and . . . legally enforceable." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301–02

(2010) (emphases added).  In other words, the federal policy favoring arbitration comes into play only *after* "a judicial conclusion" that an arbitration agreement was "validly formed and . . . legally enforceable" between the parties to the alleged agreement, which, per the Fifth Amendment and the rules governing declaratory judgments, cannot occur until the parties to the alleged agreement are before the District Court.  *See supra* pp. 11–14.

Put another way, the only reason presented for this Court to return to *Hoffmann-La Roche* for guidance—the supposed exceptionalism of arbitration agreements—is directly foreclosed by Supreme Court precedent.  There is no good reason for this Court to return to *Hoffmann-La Roche* when it has already implemented that decision in recent precedential opinions.

Nonetheless, to the extent this Court refers back to *Hoffmann-La Roche* to resolve this appeal, the Court should see that *Hoffmann-La Roche* clearly sustains the District Court's discretion to facilitate notice to all similarly situated employees and deal with the arbitration issue after the notice process.

The Supreme Court's decision in *Hoffmann-La Roche* unequivocally sustained the power of district courts to facilitate notice as part of their inherent power to manage their cases.  493 U.S. at 170.  The window of discretion provided to district courts under *Hoffmann-La Roche* is broad, leaving the district courts to

decide whether and to whom to facilitate notice within certain guidelines, some of which this Court has further clarified through its precedential decisions.

The guidelines set forth in *Hoffmann-La Roche* are fairly clear. First, district courts have the discretion to facilitate notice to "potential plaintiffs." *See* 493 U.S. at 169, 170. Second, in deciding whether to facilitate notice, district courts should consider whether notice would support the collective-action device by allowing potential plaintiffs to take "advantage of lower individual costs to vindicate rights by the pooling of resources." *See id.* at 169, 170. Third, in deciding whether to facilitate notice, district courts should consider whether notice would "benefit[] the judicial system" through the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Id.* at 170. Fourth, in deciding whether and how to facilitate notice, district courts should take care to safeguard against "the potential misuse of the class device," including by limiting "misleading communications." *Id.* at 171. Fifth, district courts should ensure that, if notice is sent, the notice process should be "distinguishable in form and function from the solicitation of claims." *Id.* at 174. *See also* WF Br. at 11–12 (acknowledging these guidelines).

The first three of these guidelines—*i.e.*, that notice can be sent to "potential plaintiffs," that notice should generally promote "the pooling of resources," and that notice should promote the "efficient resolution in one proceeding of common issues

of law and fact"—relate to whether notice should be sent and, if so, to whom. *See Hoffmann-La Roche*, 493 U.S. at 169–70. The final two of these guidelines—*i.e.*, the need to limit potential abuses and avoid "misleading communications," and the need for notice to be "distinguishable in form and function from the solicitation of claims"—relate to how the notice should be sent and what the notice should communicate. *See id.* at 171, 174.

Reviewing these guidelines, this Court should conclude the District Court acted well within its discretion under *Hoffmann-La Roche* in facilitating notice to all HMCs. As to the first guideline, although Wells Fargo strains to argue that HMCs who allegedly signed arbitration agreements are not "potential plaintiffs," this Court already clarified in *Zavala* and subsequent decisions that a "potential plaintiff" in this context is an employee for whom there is evidence, beyond pure speculation, of "a factual nexus between the manner in which the employer's alleged policy affected [the named plaintiff] and the manner in which it affected [that employee]." *Zavala*, 691 F.3d at 536 n.4; *see also supra* pp. 16–17. By omitting this Court's precedential decisions from its brief, Wells Fargo seeks to replace the Third Circuit's precedential decisions construing the term "potential plaintiffs" with Wells Fargo's preferred construction, which would exclude individuals who are claimed to be bound by arbitration agreements. WF Br. at 11. But this Court has already clarified what that phrase means by articulating its conditional-certification standard, and the

District Court properly concluded that all HMCs are potential plaintiffs. *See supra* pp. 16–18.[5]

The second guideline under *Hoffmann-La Roche* is whether notice would support the collective-action device by allowing potential plaintiffs to take "advantage of lower individual costs to vindicate rights by the pooling of resources." *See Hoffmann-La Roche*, 493 U.S. at 169, 170. The District Court's order clearly furthers this interest in three respects. First, to the extent Wells Fargo is shown easily to be incorrect about certain individuals signing arbitration agreements, which would come to light when those individuals are given notice and an opportunity to be heard, those individuals will be able to pool their resources with Plaintiff Bruno and the other approximately 2,000 HMCs who are already opt-in plaintiffs in the action below. Second, to the extent discovery and motions practice are required to determine whether certain HMCs are bound by arbitration agreements, those HMCs can pool their resources in seeking resolution of the arbitrability of their claims (which is properly an issue for the District Court in any event) to vindicate their rights to pursue their claims in federal court. Third, addressing Wells Fargo's assertion of alleged arbitration agreements after notice is sent promotes the

---

[5] Whether they will remain plaintiffs throughout the action is a separate question, to be sure, but it defies the English language and this Court's conditional certification standard to contend that individuals who are shown under *Zavala* to have suffered from the same FLSA violation as Plaintiff Bruno are not even "potential" plaintiffs.

collective interest, expressly recognized in *Hoffmann-La Roche*, that employees receive "accurate and *timely* notice concerning the pendency of the collective action . . . ." *Hoffmann-La Roche*, 493 U.S. at 170 (emphasis added); *see also id.* at 171 ("One of the most significant insights that skilled trial judges have gained in recent years is the wisdom and necessity for early judicial intervention in the management of litigation.").[6]  Wells Fargo does not acknowledge these three ways that the District Court's order promotes the pooling of resources by all HMCs in the District Court.

The third guideline under *Hoffmann-La Roche* is whether notice would "benefit[] the judicial system" through the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Id.* at 170.  In this regard, the District Court's order is also well supported.  The

---

[6] Delaying notice to conduct discovery related to alleged arbitration agreements risks impairing the ability of all potential plaintiffs from vindicating their rights, as the statute of limitations on FLSA claims generally continues to run on potential collective members' claims until they file a consent to opt into the collective action. *See* 29 U.S.C. § 256(b).  Requiring a named plaintiff to perform that discovery, without access to the absent employees who can mount a meaningful challenge to the alleged agreements, would mean a double-windfall to the employer:  the employer would not only enjoy a period of completely asymmetric discovery, it would simultaneously reduce its liability by delaying the sending of notice.  These windfalls violate sound evidentiary procedures and undercut the observation in *Hoffmann-La Roche* that the benefits of the collective-action process "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170.

validity of arbitration agreements is unquestionably an issue that would be properly before the District Court once the counterparties to those alleged agreements are before the court. The District Court's order facilitating notice to all HMCs, including those Wells Fargo claims are bound to arbitrate, and deferring resolution of arbitrability issues until all opt-ins have joined the case reduces the risk of continued piecemeal litigation on this issue, which is an animating concern in *Hoffmann-La Roche*. *See id.* at 170.[7] There should be no question, where notice has already been distributed to approximately 4,000 potential opt-ins, that distributing notice to all potential plaintiffs and resolving issues concerning arbitrability in one action, after the affected opt-ins have joined the action, will promote the efficient resolution of a common issue that some HMCs must litigate to vindicate their claims. The judicial system will benefit from this streamlining.

---

[7] Likewise, district courts have underscored the benefits to judicial economy as a compelling reason to distribute notice to all potential plaintiffs before resolving issues concerning any arbitration agreements that may apply to the new opt-in plaintiffs. *See, e.g.*, *Lancaster v. FQSR*, Civil Action No. TDC-19-2632, 2020 U.S. Dist. LEXIS 166285, at *24-*25 (D. Md. Sep. 11, 2020) (observing "it would be highly inefficient to adjudicate the validity of one plaintiff's purported arbitration agreement, only to receive, after the issuance of notice, additional claims of the existence of valid arbitration agreements relating to various opt-in plaintiffs . . ., it would be more efficient to consider and decide those questions together, after the issuance of notice."); *Delara v. Diamond Resorts Int'l Mktg.*, No. 2:19-cv-00022-APG-NJK, 2020 U.S. Dist. LEXIS 75803, at *18 (D. Nev. Apr. 30, 2020) (anticipating "another year or more" in delay if the parties are required to conduct discovery and potential motions practice concerning "arbitration agreements for individuals who are not even parties to this case yet").

The fourth and fifth guidelines of *Hoffmann-La Roche* are both resolved easily through the proper crafting of the content of the notice that is sent to HMCs. Wells Fargo claims it would be misleading to provide notice to HMCs that are allegedly bound by arbitration agreements, but that concern is manufactured. Each notice document that goes to an HMC that is allegedly bound to arbitrate can include a clear statement that Wells Fargo contends the person is bound to arbitration and cannot join the case. The notice for those HMCs can state clearly Wells Fargo's position and also state that, if the person is shown to be bound to arbitrate, they would be dismissed from the action.[8] Thus, the concern that notice would be "misleading" is easily resolved through proper language in the notice. As for the final guideline of *Hoffmann-La Roche*—the need to distinguish notice from the solicitation of claims— this too is readily addressed by including proper language in the notice. The mere fact that employees will receive notice of a pending lawsuit before it is certain they can remain in the case does not amount to "solicitation of claims"—district courts routinely authorize notice to employees who are later determined, for one reason or another, ineligible to continue in the case through trial. *See, e.g., Halle v. W. Penn*

---

[8] District courts have ordered exactly this kind of explanation on notice forms to prevent them from being misleading. *See, e.g., Delara*, 2020 U.S. Dist. LEXIS 75803, at *18 (ordering that notice include "language that discusses how the arbitration agreement and a release of claims may potentially affect opt-in plaintiffs"); *Gonzalez v. Diamond Resorts Int'l Mktg.*, No. 2:18-cv-00979-APG-CWH, 2019 U.S. Dist. LEXIS 126434, at *14 (D. Nev. July 29, 2019) (same).

*Allegheny Health Sys.*, 842 F.3d 215, 226 (3d Cir. 2016). The distinction between proper notice and solicitation is made by the content in the notice. So long as the form and content of the notice make clear that the District Court has not made any determination on the merits of the case or the validity of the alleged arbitration agreements, *see Hoffmann-La Roche*, 493 U.S. 174, and explains any additional context as necessary to ensure the recipient can make an informed decision about whether to participate and that the notice will not be misconstrued, *see id.* at 170, the final guideline of *Hoffmann-La Roche* is satisfied.

In short, the District Court's order fully promotes the interests that animated *Hoffmann-La Roche* and stays within the guidelines of that decision. Moreover, the District Court's order is the straightforward outcome of its correct application of this Court's conditional-certification framework, which itself has already done the doctrinal work of implementing the guidelines and interests that animated *Hoffmann-La Roche*. The District Court's order should be affirmed, with instructions to ensure that notices sent to HMCs who are allegedly bound to arbitration contain a clear statement regarding their inability to join the lawsuit if they are indeed obliged to arbitrate.

## C.     Sending notice to all HMCs would not violate the Federal Arbitration Act.

In its *amicus* brief, the Chamber contends the District Court's order "violates the Federal Arbitration Act [(FAA)]." Chamber Br. at 6. The Chamber does not

identify what provision of the FAA is violated.  None is.  The FAA does not contain any provision that prohibits a district court from authorizing notice under the FLSA to individuals whom the employer claims are bound by arbitration agreements.  *See* 9 U.S.C. §§ 1–16.  And sending notice to individuals whom an employer claims are bound by arbitration agreements does not violate "the FAA's mandate to enforce valid arbitration agreements."  Chamber Br. at 7.  To the extent any of the alleged agreements are in fact valid and enforceable, the District Court can and should enforce them if any individuals who are bound come before the District Court.

Indeed, the text of the FAA (which neither Wells Fargo nor the Chamber addresses) actually supports the District Court's order authorizing notice to all HMCs.  Under Section 4 of the FAA, 9 U.S.C. § 4, a district court cannot enforce an arbitration agreement unless, among other things, the person who supposedly agreed to arbitrate is given "[f]ive days' notice in writing."  9 U.S.C. § 4.  In other words, to the extent the FAA says anything about the issue before this Court, it states that, before a federal court determines that someone is required to arbitrate, the person needs to be given notice and an opportunity to challenge the alleged agreement.  Far from prohibiting the distribution of notice, the text of the FAA reinforces the basic principle that, before a district court determines that individuals are bound by arbitration agreements, the individuals must receive notice and an opportunity to be heard.  *See also supra* pp. 11–14 (arguing that due process prohibits a district court

from determining the validity and enforceability of alleged agreements that purportedly bind persons not before the court).

**D.    Sending notice to all HMCs would not violate the "federal policy" favoring arbitration.  In fact, it would violate Supreme Court precedent to apply any federal policy or presumption in favor of arbitration in this context.**

Wells Fargo and the Chamber both contend the District Court's order runs afoul of a "federal policy" favoring arbitration.  *See* WF Br. at 14; Chamber Br. at 2.  In this regard, Wells Fargo and the Chamber lean heavily on the Supreme Court's opinion in *Epic Systems* and various generalized statements in other decisions.  *See* WF Br. at 910, 13–14, 16, 20; Chamber Br. at 5–6, 11, 17, 19.

Contrary to these arguments, none of the Supreme Court's FAA decisions prohibit a district court from applying its Circuit's standard on conditional certification and, upon finding that standard was satisfied, authorizing notice to individuals whom the employer asserts are bound by arbitration agreements.  In *Epic Systems*, the Supreme Court ruled that an arbitration agreement can be enforced against an employee to dismiss that employee from a collective action and require that employee to submit her claims in individual arbitration.  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018).  Tellingly, the issue before the Supreme Court arose in the context of an employer's motion to compel arbitration filed against employees who were already before the district court.  *See id.* at 1620.  Per Section

4 of the FAA and basic due process requirements, those employees were entitled to notice of the employer's intention to enforce the alleged arbitration agreements and opportunity to challenge that enforcement. *See* 9 U.S.C. § 4.

As for the other Supreme Court FAA decisions cited by Wells Fargo and the Chamber, none address the situation here. Nor does the District Court's order contradict any of them. The Chamber argues colorfully that the District Court's order "flouts decades of Supreme Court precedent interpreting and applying the FAA." Chamber Br. at 6. But the Chamber does not actually point to any Supreme Court decisions that are contravened by the District Court's order. In authorizing notice to be sent to all HMCs, the District Court did not rule that the arbitration agreements that supposedly bound them were unenforceable. The District Court also did not presume the arbitration agreements were unenforceable. The District Court merely determined, under this Court's clear precedent for conditional certification, that Plaintiff Bruno made the showing required to authorize notice to all HMCs who were subjected to the same unlawful policies and practices as she was, which is all of them. The District Court simply decided, as a matter of sound evidentiary practice and case management, that it would sequence Wells Fargo's assertion of arbitration agreements to be considered after the notice phase. Deferring a factual issue in order to comply with this Court's standard for conditional certification, sound evidentiary practice, and basic requirements of due process does

not amount to applying a presumption of invalidity. All of Wells Fargo's alleged rights to enforce its asserted arbitration agreements remain intact. To the extent any HMCs who are bound by arbitration agreements join the action as opt-in plaintiffs, Wells Fargo can produce their arbitration agreements and demand they dismiss their claims, either by making a demand of plaintiffs' counsel or by filing a motion to compel arbitration. Wells Fargo and the Chamber may not like this procedure, but their arguments against it are no more than a free-wheeling policy analysis (discussed below)—they do not establish that the District Court's order contravenes any actual decision by the Supreme Court.

Furthermore, in seeking to lean on the "federal policy" favoring arbitration, Wells Fargo and the Chamber both play fast and loose with the contours of that policy. The so-called federal arbitration is not a free-standing legal principle around which other legal standards—such as this Court's well-established standard for conditional certification—must be reformed. Indeed, the Supreme Court has squarely held that the "federal policy" favoring arbitration is much more limited.

Under the Supreme Court's decision in *Granite Rock Co. v. Int'l Bhd. of Teamsters*, the "federal policy" favoring arbitration is far narrower than Wells Fargo and the Chamber seek to portray. In *Granite Rock*, the party seeking to compel arbitration sought to invoke the "federal policy favoring arbitration" to resolve a dispute concerning the formation date of an agreement to arbitrate. The Supreme

Court rejected the party's argument, holding that the "federal policy favoring arbitration" does not apply broadly to all issues pertaining to arbitration (such as the formation of a valid agreement to arbitrate), but rather requires the courts to "place [arbitration] agreements upon the same footing as other contracts" and to apply a "presumption of arbitrability *only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand.*" *Granite Rock*, 561 U.S. at 301–02 (emphasis added).

Driving this point home, the Supreme Court emphasized, "[n]or have we held that courts may use policy considerations as a substitute for party agreement." *Granite Rock*, 561 U.S. at 302. Speaking even more directly to the issue presented here, the Court continued, "[w]e have applied the presumption favoring arbitration . . . only where it reflects, and derives its legitimacy from, ***a judicial conclusion*** that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and . . . legally enforceable and best construed to encompass the dispute." *Id.* at 302 (emphasis added).

In other words, under *Granite Rock*, federal courts are ***prohibited*** from applying general pro-arbitration policies, or any form of "presumption" in favor of arbitration, unless there has been "a ***judicial conclusion*** that arbitration of a particular dispute is what ***the parties*** intended because their express agreement to

arbitrate was validly formed and . . . legally enforceable." *Id.* (emphases added). But, in the procedural posture before the District Court (and this appeal), pursuant to the Fifth Amendment and the procedural rules governing declaratory judgments, there cannot be any "judicial conclusion" as to whether an individual HMC who is not before the District Court in fact entered into an agreement to arbitrate unless that person is provided notice and an opportunity to challenge that conclusion. *See supra* pp. 11–14. In short, under the Supreme Court's decision in *Granite Rock* and basic requirements of due process and declaratory-judgment procedure, federal courts (including the District Court and this Court) are prohibited from applying a federal policy or federal "presumption" in favor of arbitration in this context.[9]

In their appellate briefs, neither Wells Fargo nor the Chamber acknowledge the strict limitation on the federal policy favoring arbitration that was established by the Supreme Court in *Granite Rock*, and which has been recognized by other Circuits. To the extent Wells Fargo's and the Chambers' arguments stem from that federal policy—which are most of their arguments—the Court should reject them entirely.

---

[9] Other Circuits have correctly applied *Granite Rock* to deny application of any presumption in favor of arbitration beyond the narrow limits authorized by the Supreme Court. *See, e.g., Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014); *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

Furthermore, the fact that the federal policy favoring arbitration does *not* apply in this context should give this Court serious pause about the request that Wells Fargo is making in this appeal.  If the federal policy favoring arbitration does not apply here (which it does not), then why would this Court carve a special exception for arbitration agreements from its well-established standard for conditional certification?  The answer is simple:  it should not.  Instead it should affirm the District Court's order under its precedential decisions in *Zavala* and its progeny.  *See supra* pp. 15–19.

### E.    The panels in *JPMorgan* (CA5) and *Bigger* (CA7) made crucial errors in their analyses, as numerous district courts have recognized in the wake of those decisions.

Wells Fargo leans heavily on recent decisions by the Fifth Circuit in *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019), and the Seventh Circuit in *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020).  Notably, these two decisions do not follow the same analytical path, and they do not establish quite the same doctrine.  Accordingly, this Court would not preserve uniformity among the Circuits by adopting either of these decisions–a split has already emerged between the Fifth and Seventh Circuits.

The Fifth and Seventh Circuits have not merely created a split between themselves–they have also deviated from this Court's straightforward conditional-certification standard, *see supra* pp. 15–19, and from the Supreme Court's decision

in *Hoffmann-La Roche*.  This Court should not be persuaded by these decisions to carve an arbitration exception into its conditional-certification standard.

> **1. The Fifth Circuit in *JPMorgan* follows the dissent in *Hoffmann-La Roche* and reaches a decision inconsistent with the majority opinion.**

In *JPMorgan*, the Fifth Circuit held that a district court is generally prohibited from authorizing notice under the FLSA to employees whom an employer claims are bound by arbitration agreements that encompass the FLSA claims in question. *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 503 (5th Cir. 2019).[10]  As a narrow caveat, the Fifth Circuit ruled that, if a plaintiff could raise a "genuine dispute as to the existence or validity of an arbitration agreement," then the employer would have to establish by a preponderance of the evidence that an agreement applied to a particular employee.  *See id.* at 502–03.  The Fifth Circuit made clear this was intended to be a narrow exception.  *See id.* at 503 n.17 ("We assume that in the ordinary case, as here, the party or parties seeking the collective action would not raise a genuine dispute as to the existence of an arbitration agreement, thus obviating the need for a preponderance determination as to that employee.").

---

[10] The Fifth Circuit in *JPMorgan* did not reverse the district court's order authorizing notice to employees who were allegedly bound by arbitration agreements because the case reached the Fifth Circuit on a petition for writ of mandamus. *See In re JPMorgan Chase & Co.*, 916 F.3d at 504.

The Fifth Circuit pointed to *Hoffmann-La Roche* as its authority for this ruling, but the Fifth Circuit made little effort to reconcile its decision with the majority opinion in *Hoffmann-La Roche*. As support for its conclusion, the Fifth Circuit stated that, although *Hoffmann-La Roche* "does not define the 'potential plaintiffs' whom a district court may notify about a pending FLSA action,'" *id.* at 502, the term should be read to encompass the potential plaintiffs of a single action. *See id.* 502 n.16. The Fifth Circuit also observed that, "the purpose of giving discretion to facilitate notice is because of the need for 'efficient resolution in one proceeding of common issues.'" *Id.* at 502.

From these threshold observations, however, the Fifth Circuit concluded that distributing notice to employees purportedly bound by arbitration agreements in effectively all contexts would go far beyond the discretion afforded by *Hoffmann-La Roche*. The Fifth Circuit observed that distributing notice in this situation "reaches into disputes beyond the 'one proceeding'" and "'merely stirs up litigation,' which is what *Hoffmann-La Roche* flatly proscribes." *Id.* (citing *Hoffmann-La Roche*, 493 U.S. at 174). Remarkably, the Fifth Circuit acknowledged that employees purportedly subject to arbitration agreements would likely opt in to the action anyway (thus resulting in piecemeal arbitrability proceedings), yet it concluded that "[n]onetheless, under *Hoffmann-La Roche*, district courts do not have

the discretion to order that Arbitration Employees receive notice of the action." *Id.* at 503 n.19.

There is no support in *Hoffmann-La Roche* for such a narrow cabining of district court discretion over issues that can raise legitimate case management challenges in a collective action. As several district courts have observed,[11] the Fifth Circuit's reading of *Hoffmann-La Roche* leans heavily on language from the dissent, which is the only place where concerns related to "[s]tirring up litigation" can be identified. *See Hoffmann-La Roche*, 493 U.S. at 181 (Scalia, J., dissenting). By contrast, the majority opinion in relevant part explains that "[c]ourt intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims." *Id.* at 174. The *Hoffmann-La Roche* majority cautions that district courts "must be scrupulous to respect judicial neutrality" and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* But this does not suggest that district courts lack discretion under *Hoffmann-La Roche* to distribute notice for the purpose of streamlining case management issues; in fact it says exactly the opposite. *See, e.g., id.* at 174 ("Court intervention in the notice process for case management purposes

---

[11] *See, e.g., Barone v. Laz Parking Ltd, LLC*, No. 3:17-CV-01545(VLB), 2019 U.S. Dist. LEXIS 181126, at *6 & n.1 (D. Conn. Oct. 20, 2019); *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 404 F. Supp. 3d 529, 532 (D. Mass. 2019); *see also* JA162.

is distinguishable in form and function from the solicitation of claims."); *see also, e.g.*, *id.* at 172 ("Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action."); *id.* at 171 (explaining that the "judicial system benefits by efficient resolution in one proceeding of common issues of law and fact"). The majority opinion in *Hoffmann-La Roche* also in no way suggests that notice may only be sent to those who ultimately will be viable plaintiffs. The majority opinion emphasizes the importance of resolving common issues in one proceeding, not ensuring that all those common issues are resolved in the potential plaintiffs' favor. *See ibid.*

Beyond relying on the dissenting opinion in *Hoffmann-La Roche*, the Fifth Circuit in *JPMorgan* did not address the several ways that sending notice to similarly situated employees whom the employer claims are bound by arbitration agreements would directly promote the interests underlying *Hoffmann-La Roche*. The Fifth Circuit did not consider how notice to such employees would promote the pooling of resources in three distinct ways, *see supra* pp. 24–25, nor how such notice would reduce piecemeal litigation, *see supra* pp. 25–26, nor how the content of the notice could be crafted to satisfy the perception concerns of *Hoffmann-La Roche*, *see supra* pp. 27–28. In lieu of these compelling reasons to preserve the district court's discretion in this context, the Fifth Circuit invoked the *Hoffmann-La Roche* dissent. The decision to analyze the issues in this manner contravenes the majority opinion

in *Hoffmann-La Roche* and suggests a substantial weight on the scale in favor of arbitration, which in turn violates the Supreme Court's decision in *Granite Rock. See supra* pp. 32–35.

> 2.    **The Seventh Circuit in *Bigger* diverges from *Hoffmann-La Roche* and reaches an unsound conclusion.**

In *Bigger*, the Seventh Circuit crafted a framework of "specific steps" for district courts to apply in deciding whether to authorize notice to employees whom the employer claims are bound by arbitration agreements.  According to the Seventh Circuit, "when a defendant opposes the issuance of notice by asserting that proposed notice recipients entered mutual arbitration agreements," the court "must determine whether a plaintiff contests the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020).  If no plaintiff "contests" the assertions, then the district court may not authorize notice to the employees who are allegedly bound by arbitration agreements.  *Id.*  But if a plaintiff "contests" the defendant's assertions, then the "the court must permit the parties to submit additional evidence on the agreements' existence and validity," and the "employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice." *Id.*

As support for this framework, the Seventh Circuit points to the Supreme Court's decision in *Hoffmann-La Roche*. *Id.* at 1048–49. The Seventh Circuit points to two perceived "dangers" in particular. First, the court cites "the opportunity for abuse of the collective action device: plaintiffs may wield the collective action format for settlement leverage." *Id.* at 1049 (citing *Hoffmann-La Roche*, 493 U.S. at 171). Second, the court states a "related danger is that notice giving, in certain circumstances, may become indistinguishable from the solicitation of claims—which is a process 'distinguishable in form and function' from court intervention in the notice process for case management purposes." *Id.* (citing *Hoffmann-La Roche*, 493 U.S. at 171).

In this analysis, the Seventh Circuit misreads the corresponding guidance in *Hoffmann-La Roche* and does not account for the other interests that *Hoffmann-La Roche* identifies as sustaining the district court's discretion to authorize notice. First, as to the perceived concern about "settlement leverage," there is nothing in *Hoffmann-La Roche* to suggest this theoretical concern should deprive a district court of its normal case-management discretion. The word settlement never appears in *Hoffmann-La Roche*; rather, the Supreme Court underscores the potential "misuse of the class device, as by misleading communications," *Hoffmann-La Roche*, 493 U.S. at 171. The natural reading of *Hoffmann-La Roche* is that the Supreme Court is concerned about procedurally improper collective actions and

miscommunications about the actions leading to multiplied proceedings spanning across multiple forums. Indeed, the Supreme Court notes that "the potential for misuse of the class device . . . may be **countered** by court-authorized notice." *Id.* (emphasis added). Nor would any settlement pressure based on arbitration-bound employees be likely to last long: if the employer actually has valid arbitration agreements with certain employees, it can swiftly move to compel arbitration en mass, to the extent counsel would not stipulate to dismissal.[12]

As to the second "danger"—that "notice giving, in certain circumstances, may become indistinguishable from the solicitation of claims," *Bigger*, 947 F.3d at 1049—this concern likewise does not reflect the concern about claim-solicitation driving *Hoffmann-La Roche*. In *Hoffmann-La Roche*, the Supreme Court explained

---

[12] Moreover, to the extent the Seventh Circuit was concerned about potential "abuse" by plaintiffs' counsel, it should also have considered the other side of the coin. Allowing employers to delay or prevent notice based on the mere assertion of arbitration agreements—when the only individuals who can meaningfully challenge those alleged agreements have not received notice and are not before the court— invites a wide range of efforts by employers to narrow the distribution of notice and thereby delay proceedings. *See, e.g.*, *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 404 F. Supp. 3d 529, 532 (D. Mass. 2019) (recognizing that the Fifth Circuit's approach "would incentivize defendants to raise any number of individualized defenses at the notice stage," which "would inevitably delay the litigation (as it has done here) and run counter to the majority's warning in *Hoffmann-La Roche*") (citing *Hoffmann-La Roche*, 493 U.S. at 174). By the same logic, this approach would also no doubt invite more overt abuses by certain defendants, such as submitting misleading statements that give the impression that subsets of employees have without exception entered into arbitration agreements when that is not the case.

that "Court intervention in the notice process for case management purposes *is distinguishable in form and function from the solicitation of claims*." 493 U.S. at 174 (emphasis added).  To solidify that distinction, the Supreme Court explained, "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality.  To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche v. Sperling*, 493 U.S. at 174.  This stern guidance from the Supreme Court makes clear that court-authorized notice is *inherently* distinguishable from the solicitation of claims, so long as the notices do not invite the appearance of judicial endorsement of either side of the action.  This second "danger" can thus readily be resolved through a properly crafted notice that does not express any judicial endorsement and, for employees who are allegedly bound by arbitration agreements, clearly states the employer's assertion of alleged arbitration agreements in the notice, as district courts have done on their own initiative.  *See supra* p. 27 n.8.

Beyond these two perceived "dangers," neither of which is supported by *Hoffmann-La Roche*, the Seventh Circuit also fails to properly account for the interests that are actually stated in *Hoffmann-La Roche*.  Indeed, although the Seventh Circuit concedes that, "[a]s a general matter, it may be efficient to first send notice to a group of people and then weed out those who opt in but are in fact

ineligible to join," *Bigger*, 947 F.3d at 1050, the court concluded that "efficiency cannot override the court's obligations to maintain neutrality and to shield against abuse of the collective-action device." *Id.* But, as noted, there is no reason for any notice to impair the court's obligation to maintain neutrality—a notice to someone who allegedly signed an arbitration agreement can simply state the employer's position in the notice, and the notice can be written to make clear the district court has not rendered any judgment on the merits. Moreover, the Seventh Circuit does not address the Supreme Court's recognition that the benefits of collective actions "depend on employees receiving accurate and *timely* notice concerning the pendency of the collective action," *Hoffmann-La Roche*, 493 U.S. at 170 (emphasis added), nor does it address the obvious risks to the twin aims of FLSA collective actions recognized by the Seventh Circuit—judicial economy and the vindication of FLSA rights—that are introduced by foreclosing a district court's discretion whenever an employer asserts that unnamed and unspecified putative collective members may be bound by an arbitration agreement.[13]

---

[13]*See, e.g.*, *Lancaster v. FQSR*, Civil Action No. TDC-19-2632, 2020 U.S. Dist. LEXIS 166285, at \*25 (D. Md. Sep. 11, 2020) (noting the district court's "reservations about the reasoning of *Bigger* and *In re JPMorgan Chase*" and concluding that both the "enforcement of the FLSA" and "efficiency[ are] undermined by any rigid requirement to resolve disputes about arbitration agreement agreements before deciding the question of conditional certification and issuing notice").

As one district court cogently explained, the Seventh Circuit's opinion in *Bigger* also creates practical difficulties: "[E]ven if [the named plaintiffs have standing to contest arbitration agreements asserted as to other employees], and even if doing so would not violate their due process rights, [the named plaintiffs] would have 'no way of meaningfully contesting the validity' of the arbitration agreements because he does not know which employees signed them 'or the circumstances in which they signed' the agreements." *Delara*, 2020 U.S. Dist. LEXIS 75803, at *17. Moreover, "[e]ven if [the named plaintiffs] could obtain discovery on the point," that discovery, and related motions practice, could cause "another year or more [to] pass without even the first notice going out," which is "neither practical nor efficient." *Id.* at *18 (citing *Hoffmann-La Roche*, 493 U.S. at 170–71).

At bottom, like the Fifth Circuit, the Seventh Circuit in *Bigger* draws selectively and inaccurately from the Supreme Court's opinion in *Hoffmann-La Roche*, with the end result of establishing a doctrine in favor of arbitration. This arbitration-leaning reading of *Hoffmann-La Roche* is not supported by that opinion and is directly contrary to the Supreme Court's decision in *Granite Rock*, which prohibits such pro-arbitration leanings in this context. This Court should not be persuaded by the decisions in *JPMorgan* and *Bigger*. Rather, this Court should adhere to its well-established standards for conditional certification, which are already calibrated to faithfully implement *Hoffmann-La Roche*. *See supra* pp. 15–

19.  There is no basis in *Hoffmann-La Roche* to create an arbitration exception to this Court's well-established standards for conditional certification.

### III.    Free-standing policy interests, if the Court considers them, weigh strongly in favor of affirming the District Court's order authorizing notice to all HMCs.

Many of the arguments made by Wells Fargo and the Chamber do not have any hook in the governing legal standards, but rather are free-standing policy arguments.  The Court need not and should not consider these naked policy arguments, as the well-established doctrine points unambiguously to affirming the District Court's order.  Nonetheless, to the extent the Court considers Wells Fargo's and the Chambers' untethered policy arguments, the Court should conclude the general policy interests weigh strongly in favor of affirmance.

### A. The    Chambers'    free-standing    policy    arguments    are unpersuasive.

As a threshold matter, nearly all of the Chamber's policy arguments are predicated on either (i) the "federal policy" favoring arbitration, *see* Chamber Br. at 11–12, 15–16, or (ii) an assumption that every arbitration agreement alleged by an employer was in fact entered into, and is valid and enforceable against, individuals who are not before the district court, *see id.* at 12–14.    The former group of arguments should be rejected because the federal policy favoring arbitration does not apply at all in this context.  *See supra* pp. 30–35.  The latter group of arguments should be rejected because they beg the question whether the alleged agreements are

binding at all, which cannot be determined before notice and an opportunity to be heard are provided to the persons not before the court. *See supra* pp. 11–14.

Beyond these threshold flaws, the Chamber's policy arguments are also unsubstantiated and unpersuasive. The Chamber argues that authorizing notice to employees who allegedly signed arbitration agreements would "vitiat[e] the benefits of arbitration Congress intended to protect." Chamber Br. at 11. But the alleged agreements, if valid, would be unimpaired, and the employer can seek to enforce them if any employees challenge them.

The Chamber contends that Wells Fargo's opportunity to exclude employees bound by arbitration agreements will not arise until much "later in the proceedings." *Id*. That concern is contrived. If any employees who are actually bound by arbitration agreements opt into the action, the employer can produce the arbitration agreements and demand the individual's dismissal from the action or move swiftly to compel arbitration, thus resolving in a streamlined manner an arbitrability issue that is properly before the district court.

The Chamber maintains that authorizing notice to individuals who are allegedly bound by arbitration agreements would cause "expense and delay" prior to Wells Fargo being "permitted to litigate the enforceability of the arbitration agreements." *Id.* at 12. But there is no "expense and delay" involved (the Chamber does not point concretely to any): plaintiffs' counsel in collective actions

customarily pay the modest expense associated with sending notice, and the only "delay" is the time required to provide absent employees notice and an opportunity to be heard before their legal rights are adjudicated.

The Chamber contends that a court-authorized notice to individuals who are allegedly bound by arbitration agreements "effectively encourages them" to "breach their contracts." Chamber Br. at 12. This concern is manufactured too. A court-authorized notice to such individuals can state clearly that the employer contends they are bound by arbitration agreements and that they should not opt into the action unless they have grounds to challenge the validity or enforceability of the agreements. A simple disclaimer resolves this concern, as district courts have concluded. *See supra* p. 27 n.8.

The Chamber maintains that employees "may be confused" by a court-authorized notice "into believing that they can, and should, join the collective action." Chamber Br. at 14. Again, the content of the notice can readily dispel that risk of confusion through a clear statement notifying those employees that the employer contends they are bound by arbitration agreements and that they should not opt into the action unless they have grounds to challenge the validity or enforceability of the agreements.

The Chamber urges that authorizing notice to employees who allegedly agreed to individual arbitration "subjects the employer to another set of costs that

arbitration is intended to avoid." Chamber Br. at 15. But the arbitrability of disputes under the FAA is a matter for federal courts, not arbitrators. Litigation as to the arbitrability of disputes under an alleged arbitration agreement is properly within federal court jurisdiction. The Chamber cannot point to any discovery or litigation that should have been presented to an arbitrator but that would be presented to the District Court because notice was authorized.

The Chamber contends that "[j]udicially-supervised discovery under court rules . . . could delay arbitration for these employees more than a year" and subject the employer and employee to "more formal . . . dispute resolution procedures." *Id.* at 15. But there is no reason that court-authorized notice would delay any arbitrations or that the procedures for litigating arbitrability would be any more "formal" than otherwise. Any employee who intends to challenge an alleged Wells Fargo arbitration agreement would be in federal court anyway, as arbitrability under the FAA is an issue for the federal courts. Moreover, without notice, it is more likely that arbitrability litigation would be piecemeal, which is another reason that notice is supported by *Hoffmann-La Roche*.

At bottom, the myriad policy arguments made by the Chamber are unmoored from the governing doctrine, based on a federal policy that does not apply, beg the very question of whether absent employees in fact are bound to arbitrate, or are

unsubstantiated and unpersuasive.  The Court should follow its doctrine and not be swayed by any of the Chambers' free-standing policy arguments.

### B. The countervailing policy interests weigh strongly in favor of affirmance.

Moreover, even if the Court considers the Chambers' various policy arguments (which it should not), it should readily conclude those arguments are outweighed by the strong interests, embodied in *Hoffmann-La Roche*, that point in favor of affirming the District Court's order authorizing notice to all HMCs.

First, beyond the due process and declaratory-judgment concerns addressed above, allowing district courts to sequence their resolution of alleged arbitration agreements after the notice phase is fundamentally sound evidentiary procedure and integral to district courts' inherent authority, upheld in *Hoffmann-La Roche*, to manage their cases in the interests of justice.  When an employer asserts that persons not before the Court are bound by arbitration agreements, the crucial witnesses to evaluate and contest that assertion are not available to plaintiffs' counsel.[14]  The result is an asymmetrical discovery process that is destined to produce more incorrect outcomes than the alternative of sending notice and sorting through the

---

[14] *See, e.g.*, *Delara*, 2020 U.S. Dist. LEXIS 75803, at *17 (quoting *Romero*, 404 F. Supp. 3d at 534).

arbitrability issues based on a fair evidentiary record. District courts should not be compelled to adhere to such an unsound and unfair evidentiary procedure.

Second, even if a district court were to oversee arbitration discovery before authorizing notice, as contemplated by the Fifth and Seventh Circuits, that process would remain asymmetrical and, counterproductively, would directly undermine the *Hoffmann-La Roche* interest in regulating communications to similarly situated employees through the court-authorized notice process. Indeed, even if plaintiffs' counsel could obtain (through court order or informal investigation) the contact information of some or all the key witnesses for such discovery–*i.e.*, the absent employees–the discovery and communication process would be a morass. Plaintiffs' counsel would not have an attorney-client relationship with the employees (that customarily forms when employees opt into the action), so their communications with the employees would be discoverable and the employer's attorneys could communicate directly with the employees as well. Furthermore, those employees (the key witnesses in such discovery) would no doubt want information about the pending case and some would inevitably want to join. Yet that would lead inexorably to accusations against plaintiffs' counsel of "claim solicitation" and exactly the kinds of communications and miscommunications between the employer, plaintiffs' counsel, and the absent employees that *Hoffmann-La Roche* intended to prevent through a court-regulated notice process.

Third, allowing employers to narrow or defeat notice based on the assertion of alleged arbitration agreements, at the conditional certification stage, creates substantial risks that employers will use that avenue to delay the sending of notice and thus diminish valid claims through the passage of time. *See, e.g.*, *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 404 F. Supp. 3d 529, 532–33 (D. Mass. 2019). In putative collective actions, employers routinely seek to delay the issuance of notice to similarly situated employees because, in general, delaying notice means the expiration of more time on employees' claims under the governing statutes of limitation. Even if the plaintiffs managed to successfully challenge the alleged arbitration agreements despite a completely asymmetrical discovery process, many months of the employees' claims will likely have expired by the time that arbitration litigation is resolved. *See Delara*, 2020 U.S. Dist. LEXIS 75803, at *18. This concern also goes directly to the interest in *Hoffmann-La Roche* that employees receive "timely" notice of the pending lawsuit. 493 U.S. at 170.

Fourth, allowing employers to narrow or defeat notice based on the assertion of alleged arbitration agreements, at the conditional certification stage when the relevant employees are not before the court, invites the risk that employers will overstate the group of employees who are bound by arbitration agreements.

Finally, as noted above in connection with *Hoffmann-La Roche*, allowing district courts to authorize notice to similarly situated employees who are allegedly

bound by arbitration agreements promotes the key *Hoffmann-La Roche* interests in pooling resources, reducing piecemeal litigation, and putting fact-intensive matters of case management where they belong: in the district court. *See supra* pp. 24–28.

At bottom, even if this Court were to decide this appeal on pure policy arguments alone (which it should not), the scales still tip in favor of affirming the District Court's order.

## CONCLUSION

The District Court's order correctly applied this Court's clear standard for conditional certification, which implements and clarifies the Supreme Court's decision in *Hoffmann-La Roche*, to conclude that notice should be sent to all HMCs, including those whom Wells Fargo claims are bound by arbitration agreements. The District Court's order is also firmly supported by the Supreme Court's majority opinion in *Hoffmann-La Roche*. The contrary arguments by Wells Fargo and the Chamber—based on the FAA, the "federal policy" favoring arbitration, the Fifth and Seventh Circuit decisions in *JPMorgan* and *Bigger*, and free-standing policy interests—are deeply flawed, contrary to the Supreme Court's decisions in *Hoffmann-La Roche* and *Granite Rock*, and do not provide persuasive grounds for this Court to create an arbitration exception to its settled standard for conditional certification. This Court should affirm the District Court's order authorizing notice to all HMCs with instructions directing the notice include language that clearly and

accurately communicates Wells Fargo's position regarding the alleged arbitration agreements to the HMCs whom Wells Fargo claims are bound to arbitrate.

Dated:  December 29, 2021

Respectfully submitted,

**CHIVERS LLP**

By: s/ Jeffrey W. Chivers

Jeffrey W. Chivers
Theodore I. Rostow
300 Cadman Plaza West, 12th Floor
Brooklyn, New York  11201
jwc@chivers.com
tir@chivers.com
Tel: (718) 210-9825
Fax: (212) 202-5097

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, New York 10005
bschaffer@fslawfirm.com
dcimera@fslawfirm.com
Tel: (212) 300-0375
Fax: (212) 481-1333

**THE EMPLOYMENT RIGHTS GROUP, LLC**
Joseph H. Chivers (PA ID No. 39184)
100 First Avenue, Suite 650
Pittsburgh, Pennsylvania 15222
jchivers@employmentrightsgroup.com
Tel: (412) 227-0763
Fax: (412) 774-1994

*Counsel for Plaintiff-Appellee
and all others similarly situated*

**COMBINED CERTIFICATIONS**

**LOCAL RULE 28.3(d) AND LOCAL RULE 46.1(e)**

**CERTIFICATION**

I, Jeffrey W. Chivers, one of the attorney's representing Plaintiff-Appellee Sandra Bruno and all others similarly situated, certify that I am a member of the bar of this Court.

s/ Jeffrey W. Chivers

Jeffrey W. Chivers
*Counsel for Plaintiff-Appellee*
*and all others similarly situated*

Dated: December 29, 2021

**CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF
APPELLATE PROCEDURE 32(a) AND LOCAL RULE 31.1**

I, Jeffrey W. Chivers, counsel for Plaintiff-Appellee Sandra Bruno and all
others similarly situated, certify that:

(1)    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B)(i). This brief contains 12,947 words, excluding the parts of the brief
exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

(2)    This brief complies with the typeface requirements of Rule 32(a)(5) of
the Federal Rules of Appellate Procedure and the type style requirements of Rule
32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been
prepared in a proportionally spaced typeface using the Microsoft 365 Apps for
business version of Microsoft Word in 14 point Times New Roman font.

(3)    This brief complies with the electronic filing requirements of Local
Rule 31.1(c) because the text of this electronic brief is identical to the text of the
paper copies required by the Court; and McAfee Small Business Security Version
16.0 has been run on the file containing the electronic version of this brief and no
viruses have been detected.

(4)    The paper copies of this brief are identical to the versions submitted
electronically on December 29, 2021.

s/ Jeffrey W. Chivers

Jeffrey W. Chivers
*Counsel for Plaintiff-Appellee
and all others similarly situated*

Dated: December 29, 2021

## CERTIFICATE OF SERVICE

I hereby certify that, on December 29, 2021, I filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the Appellate Electronic Filing System and the foregoing document was served electronically on all parties through their counsel of record through Appellate Electronic Filing System, including on the following counsel:

**SEYFARTH SHAW LLP**
Timothy M. Watson
   twatson@seyfarth.com
Rachel M. Hoffer
   rhoffer@seyfarth.com
John P. Phillips
   jphillips@seyfarth.com
700 Milam Street, Suite 1400
Houston, TX 77002-2812
Telephone: 713-225-2300
Facsimile: 713-225-2340

**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP**
Shelly R. Pagac
   srp@pietragallo.com
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Telephone: 412-263-2000
Facsimile: 412-263-2001

*Counsel for Defendant-Appellant*

s/ Jeffrey W. Chivers

Jeffrey W. Chivers
*Counsel for Plaintiff-Appellee*
*and all others similarly situated*

Dated: December 29, 2021

57